**Francis Ordean REESE, Appellant,**

v.

**Thomas A. FULCOMER.**

**No. 90–5825.**

United States Court of Appeals, Third Circuit.

Submitted May 21, 1991.

Decided Oct. 15, 1991.

Melinda C. Ghilardi, Office of the Federal Public Defender, Scranton, Pa., for appellant.

Martha J. Duvall, Office of the Dist. Atty., Gettysburg, Pa., for appellee.

Before STAPLETON, SCIRICA and ALDISERT, Circuit Judges.

## OPINION OF THE COURT

SCIRICA, Circuit Judge.

Francis Ordean Reese appeals the dismissal of his petition for writ of habeas corpus. We will affirm.

### I.

On June 6, 1989, Reese filed a petition for habeas corpus challenging his 1983 convictions for rape, kidnapping, indecent assault, and terroristic threats, for which he was sentenced to an aggregate term of seven and one-half to fifteen years imprisonment. Reese's petition set forth five claims. Three claims concerned ineffective assistance of counsel because of: (1) failure to file a motion to suppress witness identification resulting from a suggestive showup, photographic display, and confrontation at the preliminary hearings and trial; (2) failure to subpoena several alibi witnesses for trial; and (3) failure to effectively cross-examine the prosecuting officer and lab specialist about scientific tests of materials taken from the victim and her clothing, as well as other tests.[1] Reese also alleged that the Commonwealth withheld a statement by the victim in violation of Pa.R.Crim.P. 305(B)(1)(a) (1989)[2] and *Brady v. Maryland,* 373 U.S. 83, 87, 83 S.Ct. 1194, 1196, 10 L.Ed.2d 215 (1963). In addition, Reese contended that the magistrate judge and the district court never ruled on his request for counsel.

### A.

In support of his claim that the witness identification was suggestive, Reese outlined the events following the rape, contending that the "collective effects" of the pretrial identification procedures tainted the victim's in-court identification. Reese alleged that on April 30, 1982, the victim provided the state police with a description of the man who raped her in the late evening and early morning hours of April 29–30, 1982. On May 1, 1982, the victim's boyfriend, who thought that Reese matched the description of the victim's assailant, drove the victim by Reese's home where they observed him sitting at a picnic table in his yard. Reese also stated that on that same day the victim selected his photograph from a display of seven photographs, asserting that he was her assailant. He contended that his photograph was distinctive, however, because only it depicted a man with long sideburns and a card revealing his name and height.

Reese was jailed on May 2, 1982. While being transported by a car driven by a state trooper to a preliminary hearing set for May 12, 1982, Reese claimed that the trooper made a detour for the purpose of permitting the victim to see him. Reese stated that the victim was again permitted to view him three more times: (1) before the preliminary hearing was to be held on that same day; (2) immediately before the preliminary hearing was held when it was continued to May 21, 1982; and (3) outside the courtroom, immediately prior to her in-court identification on November 16, 1982. Reese contended that because these pretrial identification procedures tainted the victim's in-court identification, counsel should have filed a motion to suppress the tainted evidence and the victim should not have been allowed to make an in-court identification without providing an independent source for her testimony.

On March 30, 1983, following Reese's conviction, a hearing was held to review Reese's post-trial motions and to determine his claims of after-discovered evidence and ineffective assistance of counsel. In deny-

---

1. Because the magistrate held that this third claim was unexhausted, he deleted it from the petition pursuant to Reese's request and proceeded with the other claims.

2. Pa.R.Crim.P. 305(B)(1)(a) (1989) states:

   (1) *Mandatory:* In all court cases, on request by the defendant, and subject to any protective order which the Commonwealth might obtain under this rule, the Commonwealth shall disclose to the defendant's attorney all of the following requested items or information, provided they are material to the instant case. The Commonwealth shall, when applicable, permit the defendant's attorney to inspect and copy or photograph such items.

   (a) Any evidence favorable to the accused which is material either to guilt or to punishment, and which is within the possession or control of the attorney for the Commonwealth.

ing the post-trial motions, the court held that the photographic display was not conducted in a suggestive manner. The PCHA court later noted that at the March 30 hearing, the trooper who presented the photographic display to the victim testified that the photographs were similar and that Reese's trial counsel also testified that he found the photographs to be unobjectionable.

On direct appeal, the Pennsylvania Superior Court rejected Reese's "tainted identification" argument based on its review of the attack and the face-to-face contact between the victim and her assailant. The Superior Court recounted the victim's trial testimony that on April 29, 1982, at 9:30 p.m., she was driving a car looking for her boyfriend when a vehicle with flashing lights approached her from behind. Thinking it was her boyfriend, she pulled off the road. Reese, the vehicle's driver, opened her door, grabbed her, and sat in her car, claiming that she had struck his vehicle and owed him fifty dollars. Telling the victim he would take the money "in trade," he then drove her to a dead-end road, repeatedly threatening to hit her if she tried to leave the vehicle. When they stopped, Reese made her leave the vehicle, remove her slacks, and engage in sexual intercourse, all the while threatening to strike her if she resisted. After the assault, Reese and the victim drove back to where Reese had left his vehicle and he released her.

The victim testified that she was able to see Reese clearly during the entire two-hour incident. Before she was taken to the hospital for treatment, she contacted her boyfriend and the police, whom she provided with a detailed description of Reese's features, clothing, type of vehicle, and the fact that the vehicle had a Pennsylvania license plate with an "H" in it.

The magistrate judge's report summarized the Superior Court's conclusions:

> The superior court noted that at trial the victim recounted being face to face with her attacker during the sexual assault and that the whole episode lasted about two hours. The superior court noted

that further, on redirect examination, victim stated she was absolutely sure that Reese was the guilty party. Based on these facts, the superior court held that the victim's in-court identification testimony was purged sufficiently of any alleged pre-trial taint so as to render it admissible to establish petitioner's involvement as a perpetrator. The court held that counsel cannot be held less than competent for failing to do a useless act, such as filing a suppression motion concerning identification.

*Reese v. Fulcomer*, No. 89–0850, slip op. at 9 (M.D.Pa. April 25, 1990).

In his petition for habeas corpus, Reese contended once again that counsel was deficient in failing to request an independent source for the victim's in-court identification. The magistrate judge agreed with the Superior Court's analysis, adding that an independent source had been established. "Certainly, the superior court's finding with regard to the length of the face to face confrontation would furnish such evidence to show that there was an independent basis." *Id.* at 10. In view of these circumstances, the magistrate judge determined he was "entitled to rely on the findings of the state court." *Id.*

#### B.

Reese also contended that his counsel was ineffective for failing to call alibi witnesses. He stated that on April 29, 1982, he was at a tavern with three friends from 9:30 to 11:15 p.m., at which time he left with another friend and proceeded to visit the homes of two other friends. He alleged that he stayed with friends at the second home until 5:00 a.m., then had breakfast, and was dropped off at his home at 9:30 a.m. He claimed that since the attack occurred between 10:00 and 12:00 p.m. on April 29, he could not have been culpable because he was accompanied by two or more of these persons during that time. Reese contended that although his trial counsel was aware of these witnesses, he did not call them to testify.

Before the Superior Court, Reese claimed that Donald Andrews, his key alibi witness,

was never called, and that five other key witnesses were never fully investigated by his trial counsel. Although Reese's counsel gave reasons for not calling Donald Andrews at the hearing on March 30, 1983 on post-trial motions, Reese stated that no reasons were provided for failing to investigate the other witnesses.

The Superior Court disagreed. The court held that Reese had limited his alibi defense at the March 30 hearing to his counsel's failure to call only Donald Andrews. Therefore, he was precluded from claiming for the first time on appeal that his counsel was ineffective for not calling the other alibi witnesses. Furthermore, there was information that Donald Andrews was a potentially damaging witness for Reese. Andrews' wife had informed trial counsel that Reese was with her husband on the night of April 29, but that Reese had left their home in Andrews' automobile. Her description of the automobile and license number (which contained a letter) corroborated the victim's description of her assailant's vehicle. Thus, Andrews' testimony could have linked Reese with a car matching the victim's description. The Superior Court held that counsel's decision not to subpoena Donald Andrews (and informing Reese of this decision) was intended to benefit Reese.

In the habeas corpus petition, Reese contended that in transcripts of earlier hearings, trial counsel was not clear to whom he had spoken about Donald Andrews. The magistrate judge noted that there was no inconsistency because both transcripts indicated that trial counsel had spoken to Mrs. Andrews. Moreover, the magistrate judge emphasized that the common pleas court that ruled on the PCHA petitions stated that testimony by Andrews or any other alibi witness would have damaged Reese's case for two reasons: (1) Andrews' testimony could link Reese with a car matching the victim's description, and (2) trial counsel's informing the Commonwealth of any other proposed alibi witnesses "would have invariably led the Commonwealth to Andrews and the damaging state-

ments." *Reese v. Fulcomer*, No. 89–0850, slip op. at 13 (M.D.Pa. April 25, 1990).

### C.

In his habeas corpus petition, Reese also asserted that he was denied exculpatory *Brady* materials, an additional claim not raised in his petition in state court. In support, he attached pages from his brief before the Superior Court contending that on January 5, 1983, his trial counsel discovered that on April 29, 1982, the victim had informed police that her assailant had a large scar on one side of his face. Reese stated that he has no scar on his face and that this information could have convinced the jury that he was not the assailant.

The magistrate judge emphasized the Superior Court's statement that Reese's allegation about the scar was one of the reasons for convening the March 30, 1983 hearing on post-trial motions. At the hearing, the police chief denied telling anyone that the victim had told him that the assailant was scarred. He testified that when he had asked her if the assailant had any scars, she did not respond. The Superior Court concluded that no *Brady* information existed. The magistrate judge agreed.

The magistrate judge also concluded that the "observations by the state courts are uncontradicted and, therefore, the court can rely on the state court findings and record." *Id.* at 15. The magistrate judge recommended that Reese's habeas corpus petition be denied on the basis that the findings of the Pennsylvania Superior Court, *Commonwealth v. Reese*, Nos. 9, 208 (Pa.Super. Mar. 8, 1985), were presumed to be correct.

### D.

The district court adopted the magistrate judge's findings. *Reese v. Fulcomer*, No. 89–0850 (M.D.Pa. Aug. 28, 1990). With regard to the suggestive nature of the victim's identification, the district court concluded that the magistrate judge had "thoroughly reviewed the state court proceedings." The district court then upheld the magistrate judge's determination that the length of the face-to-face confrontation be-

tween Reese and the victim provided sufficient evidence to demonstrate an independent basis for the identification. "[B]ecause such factual determination is fairly supported by the record," the district court concluded that it was "entitled to rely on those findings of the state court." *Reese,* No. 89–0850, slip op. at 3–4 (citing 28 U.S.C. § 2254(d)(8) (1988)). The magistrate judge also found that identification procedures did not "negate the victim's subsequent identifications." *Id.* at 4.

Reese also objected to the magistrate judge's statement that he "did not deny" he had a face-to-face confrontation with the victim for more than two hours. The district court noted, however, that Reese failed "to provide any evidence which contradicts this finding and merely denies that such a confrontation between him and the victim occurred." *Id.* at 4–5. After reviewing the transcript of the trial proceedings, the district court concluded that there was sufficient evidence to support such a factual determination and that it could rely on the state court's findings, referring once again to 28 U.S.C. § 2254(d)(8) (1988).

With regard to counsel's alleged failure to call key alibi witnesses during the trial, the district court concurred in the magistrate judge's conclusion that Reese provided only Donald Andrews' name to his trial attorney, and that because Andrews' testimony could have been damaging, counsel decided not to call Andrews after having discussed the matter with Reese.

In his objections to the magistrate judge's report, Reese once again stated that trial counsel failed to call witnesses or investigate the availability of other alibi witnesses. In support, he submitted the signed, but unsworn, statements of two witnesses contending that they were with Reese when the crime occurred. The district court determined that these statements were not sufficient to rebut the findings that Reese submitted the name of only one witness, whose testimony would not have helped his case. Based on a *de novo* review of Reese's record, the district court found "no merit to Reese's objections" and

agreed with the magistrate judge's factual analysis and conclusions.

In this appeal, Reese contends that: (1) the district court erred in relying on state court findings to determine Reese's ineffective assistance of counsel claims because the presumption of correctness does not apply to mixed questions of law and fact; (2) the district court erred when it failed to conduct an evidentiary hearing because the state court hearing was "not full, fair and adequate due to the substandard performance of court-appointed counsel;" and (3) the district court erred when it failed to rule on Reese's request for appointment of counsel.

## II.

■ We have plenary review of Reese's allegations of ineffective assistance of counsel. *See Strickland v. Washington,* 466 U.S. 668, 698, 104 S.Ct. 2052, 2070, 80 L.Ed.2d 674 (1984) (concluding that an ineffective assistance of counsel claim is a mixed question of law and fact); *United States v. Gray,* 878 F.2d 702, 703 (3d Cir.1989) ("The issue of whether the representation a defendant received at trial was constitutionally inadequate is a mixed question of law and fact. We are therefore not bound by the clearly erroneous rule and we may freely review the district court's conclusion.") (citing *Morrison v. Kimmelman,* 752 F.2d 918, 923 (3d Cir. 1985)). However, we review for abuse of discretion a court's denial of a petitioner's request that counsel be appointed to assist him in a habeas corpus proceeding. *Battle v. Armontrout,* 902 F.2d 701, 702 (8th Cir. 1990) (citing 18 U.S.C. § 3006A(a)(2) (1988)).

■ We apply a two-step analysis in our review of a district court's denial of a habeas corpus petition without holding an evidentiary hearing. First, we decide if the facts the petitioner has alleged would, if proven, warrant relief. If they would, we determine if an evidentiary hearing is needed to establish the truth of these allegations. *Lesko v. Lehman,* 925 F.2d 1527, 1536 (3d Cir.1991) (quoting *Zettlemoyer v. Fulcomer,* 923 F.2d 284, 291 (3d Cir.1991)). In this case, we have plenary review of the

district court's decision, "as the dismissal of the habeas petition was based on the state court record, and not on independent factfinding of the district court." *Lesko*, 925 F.2d at 1536; *see also Lesko v. Owens*, 881 F.2d 44, 50 (3d Cir.1989) (deriving plenary standard from "the function of a reviewing court in a habeas corpus proceeding"), *cert. denied*, 493 U.S. 1036, 110 S.Ct. 759, 107 L.Ed.2d 775 (1990).

## III.

The district court held that the magistrate judge properly relied on state court findings that were fairly supported by the record and thus met the standard for the presumption of correctness under 28 U.S.C. § 2254(d)(8) (1988). Reese contends, however, that the presumption of correctness does not apply to mixed questions of law and fact, such as claims of ineffective assistance of counsel. We agree that "[i]n a federal habeas corpus challenge to a state criminal judgment, a state court conclusion that counsel rendered effective assistance is not a finding of fact binding on the federal court to the extent stated by 28 U.S.C. § 2254(d)." *Strickland v. Washington*, 466 U.S. 668, 698, 104 S.Ct. 2052, 2070, 80 L.Ed.2d 674 (1984). Rather, it is a mixed question of law and fact. *Id.* We have recently adopted this standard, thereby overruling our prior case law. *See Carter v. Rafferty*, 826 F.2d 1299, 1306 (3d Cir.1987) ("It is clear ... that the presumption of factual correctness [under § 2254(d)] may not be applied to mixed questions of law and fact.") (citing *Miller v. Fenton*, 474 U.S. 104, 106 S.Ct. 445, 88 L.Ed.2d 405 (1985)), *cert. denied*, 484 U.S. 1011, 108 S.Ct. 711, 98 L.Ed.2d 661 (1988).

■ We note, however, that "[t]he underlying facts about counsel's performance are entitled to the presumption of correctness under 28 U.S.C. § 2254(d), if fairly

supported by the record." *Ford v. Armontrout*, 916 F.2d 457, 460 (8th Cir.1990), *cert. denied*, — U.S. —, 111 S.Ct. 1594, 113 L.Ed.2d 657 (1991). Reese concedes that the district court is permitted to consider findings of fact made by the Pennsylvania courts if the district court fulfills the four prerequisites for giving deference to state court findings: (1) a hearing on the merits of a factual issue, (2) made by a state court of competent jurisdiction, (3) in a proceeding to which the petitioner and the state were parties, (4) evidenced by a written finding, opinion or other reliable and adequate written indicia. *See* 28 U.S.C. § 2254(d); *Townsend v. Sain*, 372 U.S. 293, 313, 83 S.Ct. 745, 757, 9 L.Ed.2d 770 (1963).[3]

If these four prerequisites are met, written findings made by a state court on a factual issue are presumed to be correct unless Reese establishes, or it is otherwise shown, or the respondent admits, one or more of eight exceptions:

(1) that the merits of the factual dispute were not resolved in the State court hearing;

(2) that the factfinding procedure employed by the State court was not adequate to afford a full and fair hearing;

(3) that the material facts were not adequately developed at the State court hearing;

(4) that the State court lacked jurisdiction of the subject matter or over the person of the applicant in the State court proceeding;

(5) that the applicant was an indigent and the State court, in deprivation of his constitutional right, failed to appoint counsel to represent him in the State court proceeding;

(6) that the applicant did not receive a full, fair, and adequate hearing in the State court proceeding;

---

**3.** Reese refers to two sources for establishing these four prerequisites and their eight exceptions: 28 U.S.C. § 2254(d)(1–8) and *Townsend v. Sain*, 372 U.S. 293, 313, 83 S.Ct. 745, 757, 9 L.Ed.2d 770 (1963). We have noted that although § 2254(d) has "basically incorporated" the criteria established in *Townsend*, "[t]he exact relationship between *Townsend* and the

§ 2254(d) exceptions is still a murky one." *Smith v. Freeman*, 892 F.2d 331, 339 n. 13 (3d Cir.1989). Following our reasoning in *Smith*, we need not "get involved" in an attempt to decipher this relationship, *id.*, because it is not significant in determining the outcome of this case.

(7) that the applicant was otherwise denied due process of law in the State court proceeding;

(8) or unless that part of the record of the State court proceeding in which the determination of such factual issue was made, pertinent to a determination of the sufficiency of the evidence to support such factual determination, is produced as provided for hereinafter, and the Federal Court on a consideration of such part of the record as a whole concludes that such factual determination is not fairly supported by the record.

28 U.S.C. § 2254(d)(1–8) (1988). In summary, the district court cannot consider the factual findings of a state court until all four § 2254(d) prerequisites have been met and, even then, there can be no presumption if any one of the eight exceptions applies.

■ According to Reese, the district court did not engage in the type of analysis that is required by § 2254(d) and *Strickland v. Washington*, 466 U.S. 668, 104 S.Ct. 2052, 80 L.Ed.2d 674 (1984). The respondent concedes that neither the magistrate judge nor the district court "specifically referred to each of these [§ 2254(d)] factors." However, the respondent contends that the magistrate judge's inquiry incorporated an analysis of these factors and that both the magistrate judge and the district court concluded that Reese failed to establish a basis for rejecting the state court's findings.

We agree. There is no indication that the respondent did not fulfill the four § 2254(d) prerequisites. There was a hearing on the merits of a factual issue (the underlying facts of Reese's claim of ineffective assistance of counsel), made by a state court of competent jurisdiction, in a proceeding to which both Reese and the respondent were parties, and evidenced by a written finding.

■ Moreover, the Supreme Court's standards under 28 U.S.C. § 2254(d) set forth that the burden rests on that party attempting to *rebut* the presumption of correctness, not the party assuming it. In *Sumner v. Mata*, 449 U.S. 539, 101 S.Ct.

764, 66 L.Ed.2d 722 (1981), the Court explained that Congress enacted subsection (d) in 1966 to alleviate the friction created between state and federal courts as a result of federal habeas corpus. *Id.* at 550, 101 S.Ct. at 770.

But it is clear that in adopting the 1966 amendment, Congress [intended also] that the findings made by the state-court system "shall be presumed to be correct" unless one of seven conditions specifically set forth in § 2254(d) was found to exist by the federal habeas court. If none of those seven conditions were found to exist, or unless the habeas court concludes that the relevant state-court determination is not "fairly supported by the record," [under § 2254(d)(8) ] "the burden shall rest upon the applicant to establish *by convincing evidence* that the factual determination by the State court was erroneous." (Emphasis supplied.)

*Id.* at 550–51, 101 S.Ct. at 770–71. In turn, *Sumner* states that § 2254(d) provides no specific procedural requirements for there to be a "hearing on the merits of a factual issue," other than that the petitioner and respondent be parties to the state proceeding and that the state-court decision be "evidenced by a written finding, written opinion, or other reliable and adequate written indicia." *'Id.* at 546–47, 101 S.Ct. at 768–69 (citing § 2254(d)).

■ Recent cases concerning a habeas petitioner's entitlement to an evidentiary hearing have held to the *Sumner* standard. *See, e.g., Lesko v. Lehman*, 925 F.2d 1527, 1538 (3d Cir.1991) (stating that 28 U.S.C. § 2254(d) "provides that a habeas court shall accord a presumption of correctness to 'a determination after a hearing on the merits of a factual issue' made in the course of the petitioner's state court proceedings;" this presumption may be rebutted, however, "by a showing that the state court determination was deficient for one of the reasons specified" under the statute); *Casper v. Ryan*, 822 F.2d 1283, 1291 (3d Cir.1987) ("We must give the Superior Court's findings of fact a presumption of correctness unless we determine that they

are not fairly supported by the record.") (citing 28 U.S.C. § 2254(d)(8)), *cert. denied,* 484 U.S. 1012, 108 S.Ct. 714, 98 L.Ed.2d 664 (1988). Moreover, we have made such determinations based upon references to § 2254(d) in general, without a specific discussion of any of the eight numbered factors. *See, e.g., Riddick v. Edmiston,* 894 F.2d 586, 592 (3d Cir.1990) (denying a hearing under § 2254(d) because the prosecutor did not improperly exclude black jurors). As we will show, both the magistrate judge and the district court examined Reese's claims at length to support the presumption of correctness, whereas Reese did not sufficiently rebut it.[4]

## IV.

■ We have noted that § 2254(d) "reflect[s] a clear congressional policy favoring deference to state findings of fact absent good cause for rejecting such findings." *Nelson v. Fulcomer,* 911 F.2d 928, 932 (3d Cir.1990). However, the presumption of correctness of a state court's factfinding is not applicable if the merits of the factual dispute are left unresolved at the state hearing. In such cases, a federal court must grant a habeas applicant an evidentiary hearing. *Sullivan v. Cuyler,* 723 F.2d 1077, 1084 (3d Cir.1983). Taking Reese's factual assertions in the light most favorable to him, *see Smith v. Freeman,* 892 F.2d 331, 338 (3d Cir.1989) (citing *Keller v. Petsock,* 853 F.2d 1122, 1128 (3d Cir.1988)), we rely on the standards provided by the eight exceptions under § 2254(d) and the more general guidance of *Townsend v. Sain,* 372 U.S. 293, 83 S.Ct. 745, 9 L.Ed.2d 770 (1963): "Where the facts are in dispute, the federal court in habeas corpus must hold an evidentiary hearing if the habeas applicant did not receive a full and fair evidentiary hearing in a state court, either at the time of the trial or in a collateral proceeding." *Id.* at 313, 83 S.Ct. at 757.

## A.

■ We first note that the district court has discretion to determine whether a habeas corpus petitioner is entitled to an evidentiary hearing. 28 U.S.C. § 2254, Rule 8(a). In *Strickland,* the Supreme Court held that when reviewing a claim of ineffective assistance of counsel, a court must consider all of the facts of the case. 466 U.S. at 687–88, 104 S.Ct. at 2064–65. This standard requires courts to examine carefully the trial record in order to detect the "nature and seriousness" of counsel's error, *McNeil v. Cuyler,* 782 F.2d 443, 449 (3d Cir.), *cert. denied,* 479 U.S. 1010, 107 S.Ct. 654, 93 L.Ed.2d 709 (1986), and the "thoroughness" of an attorney's investigation and preparation. *Government of the Virgin Islands v. Bradshaw,* 726 F.2d 115, 119 (3d Cir.), *cert. denied,* 469 U.S. 829, 105 S.Ct. 113, 83 L.Ed.2d 56 (1984).

*Strickland* sets forth widely referenced criteria for evaluating claims of ineffective assistance of counsel:

First, the defendant must show that counsel's performance was deficient. This requires showing that counsel made errors so serious that counsel was not functioning as the "counsel" guaranteed the defendant by the Sixth Amendment. Second, the defendant must show that the deficient performance prejudiced the defense. This requires showing that

---

4. Reese contends that because the district court did not engage in the analysis required under 28 U.S.C. § 2254(d), the court "never gave Reese an opportunity to address [the § 2254(d)(1–8) factors], despite several references thereto in his Habeas Corpus Petition." Brief for Appellant at 15. As we have noted, however, the *Sumner* standard puts the burden on Reese to rebut the presumption of correctness, not on the court to prove it. Therefore, Reese's burden would not be precluded even if the district court had engaged in no "presumption" analysis. Reese also contends that if he had "been given the opportunity to address" these factors, he would have relied on: (d)(3) "the material facts were not adequately developed at the State court hearing;" and (d)(6) "did not receive a full, fair and adequate hearing in the State court proceeding." Reese states that these factors arose because his state court attorneys were "inadequate and ineffective." However, Reese presents these claims even though he does not specifically state them as the numbered exceptions under § 2254(d). In turn, the magistrate judge and the district court subsequently denied these claims in their analysis of Reese's contentions of ineffectiveness of counsel and request for an evidentiary hearing.

counsel's errors were so serious as to deprive the defendant of a fair trial, a trial whose result is reliable.

466 U.S. at 687, 104 S.Ct. at 2064. Moreover, because *Strickland* emphasizes that a court's evaluation of an attorney's performance must be "highly deferential" so as to diminish the possible distortions of hindsight, a court "must indulge a strong presumption that counsel's conduct falls within the wide range of reasonable professional assistance." *Id.* at 689, 104 S.Ct. at 2065.

In view of *Strickland*'s standard, we believe that Reese did not show his counsel's performance was deficient. Both the magistrate judge and the district court demonstrated that Reese did not successfully dispute the facts relating to his claims of ineffective assistance of counsel and that the state court hearing was full, fair, and adequate. Moreover, even if we were to accept that his counsel's performance was deficient, we find no evidence in the record to show that this performance prejudiced Reese's defense.

### B.

First, Reese did not provide evidence contradicting the magistrate judge's or the district court's holding that he had submitted the name of only one alibi witness, Donald Andrews, to his trial counsel. Moreover, the facts indicate that Andrews' testimony could have been damaging to Reese's case and that because of this, Reese and his attorney decided not to call him. The testimony of the other alibi witnesses Reese referred to could also have led to an eventual request for testimony from Andrews. Thus, Reese's counsel's decision to refrain from calling either Andrews or the other alibi witnesses was not deficient.

Given these circumstances, Reese's claim would not survive the *Strickland* standard of ineffective assistance of counsel. Reese did not show that his counsel's representation was so deficient it fell outside "the wide range of reasonable professional assistance." Nor did he prove that the alleged error would have changed the result of his trial. *Strickland,* 466 U.S. at 689, 104 S.Ct. at 2065.

Support for this conclusion is found in two similar cases. In *Ford v. Armontrout,* 916 F.2d 457 (8th Cir.1990), *cert. denied,* — U.S. —, 111 S.Ct. 1594, 113 L.Ed.2d 657 (1991), the court denied a habeas petitioner's claim that his trial counsel provided ineffective assistance of counsel for failing to call an alibi witness in his rape case. Petitioner's counsel had found the witness would not have supplied an alibi and counsel's performance was considered reasonable under *Strickland. Id.* at 460. As in this case, the court determined that there was no need for a hearing.

In another similar case, *Lindsey v. Smith,* 820 F.2d 1137 (11th Cir.1987), *cert. denied,* 489 U.S. 1059, 109 S.Ct. 1327, 103 L.Ed.2d 595 (1989), the court held that the habeas petitioner's trial counsel would have "engaged in 'poor strategy'" had he attempted to pursue an alibi defense when, among other things, "'at least one of the alibi witnesses placed the petitioner in an automobile which fit the description of the one owned by the victim.'" *Id.* at 1152 (citation omitted). Comparable conclusions have been reached in other cases.[5]

---

5. *See, e.g., Bassette v. Thompson,* 915 F.2d 932, 940 (4th Cir.1990) (no ineffective assistance due to counsel's failure to investigate habeas petitioner's alibi witness to determine if she was lying because "[t]here is no rule that counsel must disbelieve prospective witnesses presented to him by his client, or that he must spend considerable time and effort in testing the veracity of such witnesses or attempting to disprove their statements"), *cert. denied,* — U.S. —, 111 S.Ct. 1639, 113 L.Ed.2d 734 (1991); *Scott v. Jones,* 915 F.2d 1188, 1191 (8th Cir.1990) (no ineffective assistance because counsel's failure to call habeas petitioner's girlfriend as an alibi witness was a matter of sound trial strategy), *cert. denied,* — U.S. —, 111 S.Ct. 1626, 113 L.Ed.2d 723 (1991); *United States v. Hamblin,* 911 F.2d 551, 556 (11th Cir.1990) (no ineffective assistance due to counsel's failure to provide required notice of alibi, thereby precluding admission of alibi evidence, where defendant's alibi did not place him away from the scene of the crime until after the crime was committed), *cert. denied,* — U.S. —, 111 S.Ct. 2241, 114 L.Ed.2d 482 (1991).

## C.

Also, Reese did not sufficiently show that his counsel failed to fully develop the identification aspect of his ineffective assistance of counsel claim. Reese did not present sufficient evidence to demonstrate that the showup or confrontations were suggestive. Nor did Reese provide evidence contradicting the magistrate judge's acceptance of both the trooper's and trial counsel's testimony at the March 30, 1983 hearing that the displayed photographs were "similar" and "unobjectionable." However, even if we were to accept Reese's depiction of these pretrial procedures in the light most favorable to him, we believe Reese was not denied due process.

In *Neil v. Biggers*, 409 U.S. 188, 93 S.Ct. 375, 34 L.Ed.2d 401 (1972), the Court noted general guidelines "as to the relationship between suggestiveness and misidentification," and set forth a five-factor "totality of the circumstances" reliability test for determining "the likelihood of misidentification which violates a defendant's right to due process." *Biggers*, 409 U.S. at 198, 93 S.Ct. at 381. These factors were: "(1) the opportunity of the witness to view the criminal at the time of the crime, (2) the witness' degree of attention, (3) the accuracy of the witness' prior description of the criminal, (4) the level of certainty demonstrated by the witness at the confrontation, and (5) the length of time between the crime and the confrontation." *Id.* at 199, 93 S.Ct. at 382.

In considering the "totality of the circumstances" in *Biggers*, the Supreme Court held that even though the station house showup in that case may have been suggestive, and seven months lapsed between the crime and the confrontation, there was no substantial likelihood of misidentification. The rape victim spent up to thirty minutes with her assailant; she

viewed him under artificial light in her home and a full moon outdoors; she directly faced him at least twice; and her description to police included his approximate age, height, weight, skin complexion, build, and voice. She emphasized that she had "no doubt" that the defendant was the person who had raped her, even though her daughter, who had viewed the assailant briefly, could not offer successful identification. 409 U.S. at 200–01, 93 S.Ct. at 382–83.

In *Manson v. Brathwaite*, 432 U.S. 98, 97 S.Ct. 2243, 53 L.Ed.2d 140 (1977), the Court cited *Biggers* as having established a uniform standard of admissibility: "The admission of testimony concerning a suggestive and unnecessary identification procedure does not violate due process so long as the identification possesses sufficient aspects of reliability." *Id.* 432 U.S. at 106, 97 S.Ct. at 2249. In concluding that "reliability is the linchpin in determining the admissibility of identification testimony," the Court cited the *Biggers* "totality of the circumstances" factors as guidelines in making this determination. *Id.* 432 U.S. at 114, 97 S.Ct. at 2253. The "corrupting effect of the identification procedure" was then to be "weighed against" the *Biggers* factors. *Id.*

## D.

In addressing Reese's claims that the pretrial identification procedures violated his due process rights we ask whether the identification procedures [6] were impermissibly suggestive and, if so, did the procedures create a "very substantial likelihood of irreparable misidentification" under the totality of the circumstances. *Brathwaite*, 432 U.S. at 116, 97 S.Ct. at 2254; *see also Neil v. Biggers*, 409 U.S. 188, 198, 93 S.Ct. 375, 381, 34 L.Ed.2d 401 (1972). Thus, even assuming that the evidence was suggestive, "a degree of sug-

---

**6.** We apply the term "pretrial" to all six identification procedures that Reese contends were suggestive and thereby influenced his in-court identification. However, we note that the photodisplay in this case occurred before Reese was indicted or arrested. Moreover, Reese was never subjected to a corporeal lineup. Therefore, this case is distinguishable from post-indictment or post-arrest cases where an accused has a Sixth Amendment right to counsel at a lineup. *See Gilbert v. California*, 388 U.S. 263, 87 S.Ct. 1951, 18 L.Ed.2d 1178 (1967); *United States v. Wade*, 388 U.S. 218, 87 S.Ct. 1926, 18 L.Ed.2d 1149 (1967).

gestiveness does not in itself require exclusion of the evidence." *United States v. Dowling,* 855 F.2d 114, 117 (3d Cir.1988), *aff'd,* 493 U.S. 342, 110 S.Ct. 668, 107 L.Ed.2d 708 (1990). "[R]eliability is the linchpin in determining the admissibility of identification testimony." *Brathwaite,* 432 U.S. at 114, 97 S.Ct. at 2253.

Because appellate courts have determined the reliability of an identification procedure by balancing the suggestiveness of the procedure against the *Biggers* factors as well as other types of evidence,[7] the use of any particular procedure will not require suppression simply because it poses a risk of misidentification. For example, a showup or photographic display whose composition or procedure are impermissibly suggestive will not be per se inadmissible if other factors support the reliability of the victim's testimony. *See United States v. Sebetich,* 776 F.2d 412, 420 (3d Cir.1985) (no violation of due process by in-court identification even though defendant sat near counsel's table).

### E.

The defendant has the initial burden of demonstrating that the confrontation procedure was impermissibly suggestive. *United States v. L'Allier,* 838 F.2d 234, 239 (7th Cir.1988). "Only if the defendant meets this initial burden will the court consider the admissibility of the identification under the 'totality of the circumstances.' " *Id.* at 239. In this case, Reese contends that his counsel was ineffective for failing to file a motion to suppress witness identification stemming from a suggestive showup, photographic display, and confrontation.

### 1. Observing Reese at His Home.

First, Reese claims that on May 1, 1982, the victim's boyfriend drove her past Reese's home where they observed him "at close range," thereby constituting a suggestive showup, even though the victim testified that she was not able to see him clearly at this time. Taking Reese's version of the facts in the light most favorable to him, however, Reese offered no evidence that this viewing by the victim was in any way arranged or initiated by the government. *See United States v. Stevens,* 935 F.2d 1380, 1390 n. 11 (3d Cir.1991) ("[I]n order to establish that a pre-trial confrontation was unduly suggestive, the defendant must first show that the government's agents arranged the confrontation or took some action during the confrontation which singled out the defendant.") (citation omitted).

Moreover, even when the government has some involvement, similar types of confrontation evidence have been held not impermissibly suggestive if the showup occurred by happenstance. In *Albert v. Montgomery,* 732 F.2d 865, 871 (11th Cir. 1984), the court determined that a brief encounter in which assault victims viewed the petitioner on his front porch as the sheriff drove the victims by the petitioner's home was not "impermissibly suggestive." Although the court regarded the circumstance as "suspicious," it noted that the state court had found the identification to be a "complete happenstance." Moreover, it concluded that "no court has found these circumstances to be in any way contrived." *Id.* at 872. Shortly thereafter, victims identified the petitioner in a lineup. *Id.* at 868. In *Albert,* victims were purposely driven by the petitioner's home with the intent of viewing his van (which they positively identified) whereas in this case, the victim's boyfriend drove the victim by with the purpose of viewing Reese. Regardless, other potentially suggestive circumstances in *Albert* (associating the petitioner with his identified van, being driven by a sheriff,

---

7. In addition to the five *Biggers* factors, the United States Courts of Appeals have considered other types of evidence of the defendant's guilt for determining reliability. *See, e.g., United States v. Lau,* 828 F.2d 871, 975 (1st Cir.1987) (reliability strengthened when one defendant was placed near the scene of the crime), *cert.* denied, 486 U.S. 1005, 108 S.Ct. 1729, 100 L.Ed.2d 194 (1988); Foley, *Investigation and Police Practices: Identifications,* 77 Geo.L.J. 626, 634–35 & n. 612 (1989) (reviewing United States Courts of Appeals cases introducing other types of evidence).

seeing other sheriffs at the petitioner's home), were not present in this case.

## 2. The Photographic Array.

■ The suggestiveness of a photographic array depends on several factors, including the size of the array, its manner of presentation, and its contents. If there is no prejudice in the manner of presentation, the primary question is whether the suspect's picture is so different from the rest that it suggests culpability. *United States v. Maldonado–Rivera*, 922 F.2d 934, 974 (2d Cir.1990), *cert. denied*, —— U.S. ——, 111 S.Ct. 2858, 115 L.Ed.2d 1026 (1991). For example, in *United States v. Dunbar*, 767 F.2d 72 (3d Cir.1985), we held that the police alteration of display photographs of all six persons to include a beard and cap was not unduly suggestive because each photograph was altered in the same way. *Id.* at 74; *see also Maldonado–Rivera*, 922 F.2d at 974 (holding that size of array (nine photographs) was not unduly small, array was not presented in a suggestive manner, and there was no feature of the defendant that noticeably departed from the rest).

Moreover, photographic displays have been held not unduly suggestive even when certain characteristics of the defendant or his photograph are set apart from others. *See, e.g., United States v. Dowling*, 855 F.2d 114, 117 (3d Cir.1988) (fact that defendant was only person in display of six who wore a red tee-shirt was not suggestive when other men also wore colored tee-shirts and "were comparable in dress and appearance"), *aff'd*, 493 U.S. 342, 110 S.Ct. 668, 107 L.Ed.2d 708 (1990); *United States v. Sebetich*, 776 F.2d 412, 418 (3d Cir.1985) (no suggestiveness when spontaneously viewed photograph of defendant that victim-police officer saw on police station wall was included in the array of five photos that the officer viewed of men with similar appearance), *cert. denied*, 484 U.S. 1017, 108 S.Ct. 725, 98 L.Ed.2d 673 (1988); *see also United States v. Mickens*, 926 F.2d 1323, 1329 (2d Cir.1991) (fact that defendant's picture was the only photocopy in the array was "insignificant"); *United States v. Maguire*, 918 F.2d 254, 265 (1st Cir.1990) (reviewing recent cases rejecting argument of impermissible subjectivity in photospreads because only the defendant was wearing an earring; or had beard and braids; or had dreadlocks and hair covering), *cert. denied*, —— U.S. ——, 111 S.Ct. 1421, 113 L.Ed.2d 474 (1991).

■ In this case, Reese contends that his photograph was distinctive within a display of seven photographs because only it depicted a man with long sideburns and a card revealing his name and height. We disagree. Long sideburns and a display of height would not sufficiently distinguish Reese from the other photographs. Nor would the sight of his name by itself necessarily invalidate the photo display.

A photographic display composed of obvious mug shots, for example, has not been rendered suggestive. *See, e.g., United States v. L'Allier*, 838 F.2d 234 (7th Cir. 1988) (photo array not rendered impermissibly suggestive although two photos, including defendant's, typified those used by police). In *United States v. Axtman*, 589 F.2d 196, 199 (5th Cir.1979), the court held as not unduly suggestive the use of six photographs in a seven-photo display, including the defendant's, that suggested criminal conduct because the photographs revealed identification tags around the defendants' necks that were concealed by tape. Moreover, only the defendant was shown against a height backdrop. The court determined that the photographic display was "merely one step in the investigation" and the FBI could not be expected to "sanitize every aspect of its investigation in anticipation of a merely speculative effect upon a future defendant's conduct of her defense." *Id.* at 199. Although the height backdrop could be suggestive of criminal activity, a finding of prejudice was not "ineluctable" because viewers could have assumed that the photo was taken during the investigative stages of the crimes. *Id.; see also Cikora v. Dugger*, 840 F.2d 893 (11th Cir.1988) (height markings in a photograph were not impermissibly suggestive because police did not point them out to the victims and "at least three,

and possibly all, of the other five photographs were 'mug shots' ").

As we have noted, the district court cited prior testimony from both the state trooper and trial counsel indicating that Reese's photograph was similar to the others in the display.

### 3. Additional Viewings.

■ Reese also contends that the victim viewed him three more times: before each of two preliminary hearings and directly before trial. However, unarranged confrontations of this sort have not been considered suggestive. For example, in one case the court held that it was not unduly suggestive when a victim inadvertently saw the defendant while she was standing outside the courtroom before her testimony and was asked if she saw the person who robbed her, even though the victim had been unable to identify the defendant from a photodisplay that she had seen earlier. United States v. Wade, 740 F.2d 625, 627 (8th Cir.1984); see also United States v. Domina, 784 F.2d 1361, 1369–70 (9th Cir. 1986) (robbery victim's observation of the defendant exiting from a courtroom during recess and recognizing the defendant as the robber was not considered unduly suggestive; victim was not expecting to see the defendant and he was not manacled, escorted by marshals, or singled out to her), cert. denied, 479 U.S. 1038, 107 S.Ct. 893, 93 L.Ed.2d 845 (1987). Finally, in Thompson v. Mississippi, 914 F.2d 736 (5th Cir.1990), cert. denied, ––– U.S. –––, 111 S.Ct. 1083, 112 L.Ed.2d 1187 (1991), the court determined that a jail cell confrontation in which a robbery victim gained access to the cell area and identified the defendant as his assailant was not improperly suggestive. Id. at 738.

These cases indicate, then, that the victim's viewing Reese on the day before each preliminary hearing was set and immediately prior to her in-court identification, was not "impermissibly" suggestive. Moreover, Reese has provided no evidence that these viewings were deliberately arranged by the government.

### F.

■ A more difficult task is determining whether the accumulation of individually proper viewings can be considered impermissibly suggestive. Taking the facts in the light most favorable to Reese, the victim viewed him six times between the time of the rape and her in-court identification: (1) twice on May 1, 1982, when the victim and her boyfriend drove by Reese's home and when the victim was shown the photographic display; (2) twice on May 12, 1982, before the preliminary hearing was first scheduled; (3) once on May 21, 1982, before the preliminary hearing when it was continued; and (4) once outside the courtroom immediately prior to the victim's in-court identification on November 16, 1982.

In Foster v. California, 394 U.S. 440, 441, 89 S.Ct. 1127, 1128, 22 L.Ed.2d 402 (1969), the Supreme Court held that the government's use of three separate and suggestive pretrial procedures was "so arranged as to make the resulting identifications virtually inevitable," id. at 443, 89 S.Ct. at 1129, particularly given that the victim did not identify the petitioner until the third suggestive procedure. Similarly, in Thigpen v. Cory, 804 F.2d 893 (6th Cir. 1986), cert. denied, 482 U.S. 918, 107 S.Ct. 3196, 96 L.Ed.2d 683 (1987), the court held as "unduly suggestive" the victim's encounter with the defendant three times prior to identifying him as the second of two robbers: at the line-up, at the first (identified) robber's preliminary examination, and at the first robber's trial. Id. at 895–96.

Thigpen, however, can be distinguished from this case. Thigpen involved two defendants. Although the victim identified the first defendant from the line-up, he did not identify the second defendant at that time. The victim recognized the second defendant when he saw him sitting with the first defendant at the first defendant's preliminary hearing and trial. Thereafter the victim claimed that the second defendant was the other robber, while admitting that he remembered him from the line-up. In this case, the victim immediately identified Reese from the photographic display, stating that she had "no doubt" that he

was the assailant. Given this initial foundation, subsequent viewings of Reese at most enhanced, rather than instigated, her identification.

■ Whether multiple, but individually proper, viewings of a suspect are deemed "impermissibly suggestive" may depend on the strength and propriety of the initial identification. If the initial identification is definite and the procedure is proper, subsequent viewings can be considered as redundant, or at most, reinforcing. If the initial identification is either nonexistent or weak, however, subsequent viewings may be impermissibly suggestive.

In conclusion, although some doubts have been raised, we do not believe that Reese met his burden of demonstrating that the pretrial identification procedures were impermissibly suggestive.

## V.

■ Ordinarily this would end our inquiry. If we had decided that the identification procedures were impermissible, we would then decide whether they "created a very substantial likelihood of irreparable misidentification" according to the *Biggers–Brathwaite* "totality-of-the-circumstances" test. *See, e.g., Landano v. Rafferty,* 856 F.2d 569, 571 (3d Cir.1988) (*Biggers*'s totality-of-the-circumstances test pertains only to identifications obtained through suggestive means), *cert. denied,* 489 U.S. 1014, 109 S.Ct. 1127, 103 L.Ed.2d 189 (1989). Nevertheless, because the circumstances in this case so compellingly demonstrate the reliability of the victim's in-court identification, we think it instructive to proceed with this analysis.

In *United States v. Hanigan,* 681 F.2d 1127, 1132–33 (9th Cir.1982), *cert. denied,*

459 U.S. 1203, 103 S.Ct. 1189, 75 L.Ed.2d 435 (1983), the defendant contended that the pretrial photograph identification procedure was impermissibly suggestive because the three victims selected pictures of the defendant from his high school yearbooks and his name appeared under his picture in one of the yearbooks. Assuming for the purpose of argument that the procedure was suggestive, the court held that it did not violate due process because "sufficient indicia of reliability" were present under the five-factor test which weighed against the "corrupting effect of any suggestiveness." *Id.* at 1133. The victims were held hostage by the defendants for several hours in the middle of the day, the identification was made the following day, and two of the three victims were positive in their identification. *Id.* (citing *United States v. Field,* 625 F.2d 862, 866 (9th Cir.1980) (identification was "the product of observations at the time of the crime" rather than the result of "impressions made during the suggestive pretrial photographic identification process")).[8]

Under the totality of the circumstances, we believe that the victim's pretrial identification procedures created no substantial likelihood of irreparable misidentification at the trial. Concerning the victim's opportunity to view her assailant, we note that "it has often been remarked [in the case law] that rape victims usually have a better opportunity to observe their assailants than victims or witnesses of other crimes." N.R. Sobel, *Eyewitness Identification: Legal and Practical Problems* § 6.3(a) at 6–11 (rev. ed. 1990); *see also Moore v. Illinois,* 434 U.S. 220, 235, 98 S.Ct. 458, 468, 54 L.Ed.2d 424 (1977) (Blackmun, J., concurring). In this case, the victim spent up to two hours with Reese and testified that

---

**8.** Other courts have made similar applications of the five-factor test. *See, e.g., United States v. Dring,* 930 F.2d 687 (9th Cir.1991) (even assuming that the showing of a single photograph of the defendant during a pretrial photo identification was unduly suggestive, in-court identifications of the defendant were admissible under *Biggers* ); *United States v. Murdock,* 928 F.2d 293, 297 (8th Cir.1991) (stating that even though some witnesses' descriptions of the robber were not "extremely detailed or accurate," their iden-

tifications at trial were reliable under the "totality" test); *Ford v. Armontrout,* 916 F.2d 457, 459 (8th Cir.1990) (an impermissibly suggestive pretrial identification did not make an in-court identification unreliable where the victim had time to view the defendant, her description of the assailants was accurate, and there was no hesitation in her identification), *cert. denied,* —— U.S. ——, 111 S.Ct. 1594, 113 L.Ed.2d 657 (1991).

she looked at him the entire time both inside and outside of the car, and in varying degrees of light. At the very least, the victim had an opportunity to view Reese by the light of the highway. In *Biggers*, the rape victim spent thirty minutes with her assailant.

Moreover, the victim appeared able to focus a considerable degree of attention on Reese given her close proximity to him and the accuracy of her prior description, which was sufficiently detailed and specific for her boyfriend to have suggested Reese as the possible assailant. The victim here also selected Reese initially from an array of seven photographs.

Similar to the victim in *Biggers*, the victim in this case expressed a high level of certainty that Reese was her assailant. Moreover, the amount of time intervening between the crime and the identification was only two days, as compared to *Biggers*, where seven months elapsed between the crime and the confrontation. The victim also offered additional identifying evidence apart from the five-factor *Biggers–Brathwaite* test—an accurate description of the type of car that Reese had borrowed and its license plate.

Under the totality of the circumstances, the reliability of the identification greatly outweighs any possible suggestiveness of the pretrial identification procedures. Therefore Reese could not have been prejudiced by his counsel's failure to question the pretrial identification procedures. *See Smith v. Puckett*, 907 F.2d 581, 583–84 (5th Cir.1990) (no ineffective assistance even if state improperly showed photograph of defendant to prosecution witnesses before trial because identification did not taint reliability of witnesses' in-court identification), *cert. denied*, — U.S. —, 111 S.Ct. 694, 112 L.Ed.2d 685 (1991); *Perron v. Perrin*, 742 F.2d 669, 676 (1st Cir.1984) (no ineffective assistance because "failure to file suppression motion was inconsequential, given the admissibility of the pretrial photographic identifications and the strong in-court identification by the victim").

## VI.

Reese contends that he made his first request for appointment of counsel in his habeas corpus petition and renewed his request in his objections to the magistrate judge's report. He claims that the magistrate judge and the district court never ruled on his requests, and that there was a four-month delay in the district court's proceedings because of numerous filings to obtain documents that counsel could have simplified and expedited. He also states that he was prejudiced because he neglected to supplement the district court record with important items that counsel would have included, such as the affidavit of a key alibi witness. For these reasons, he claims the district court abused its discretion in failing to appoint counsel.

■ We disagree. There is no "automatic" constitutional right to counsel in a federal habeas corpus proceeding. *Morrison v. Duckworth*, 898 F.2d 1298, 1300–01 (7th Cir.1990); *Hooks v. Wainwright*, 775 F.2d 1433, 1438 (11th Cir.1985), *cert. denied*, 479 U.S. 913, 107 S.Ct. 313, 93 L.Ed.2d 287 (1986). "It has not been held that there is any general obligation of the courts, state or federal, to appoint counsel for prisoners who indicate, without more, that they wish to seek post-conviction relief." *Johnson v. Avery*, 393 U.S. 483, 488, 89 S.Ct. 747, 750, 21 L.Ed.2d 718 (1969); *Wainwright v. Torna*, 455 U.S. 586, 587, 102 S.Ct. 1300, 1301, 71 L.Ed.2d 475 (1982); *see also Mitchell v. Wyrick*, 727 F.2d 773, 774 (8th Cir.1984) (appellant not entitled to counsel at state post-conviction proceedings because they are civil in nature and not covered by the Sixth Amendment which applies only during the pendency of a criminal case), *cert. denied*, 469 U.S. 823, 105 S.Ct. 100, 83 L.Ed.2d 45 (1984).

■ Any person seeking relief under § 2254 may be granted counsel, however, "whenever the United States magistrate or the court determines that the interests of justice so require and such person is financially unable to obtain representation." 18 U.S.C. § 3006A(g) (1988) ("Discretionary appointments"). Under these guidelines, the district court must first decide if the

petitioner has presented a nonfrivolous claim and if the appointment of counsel will benefit the petitioner and the court. Factors influencing a court's decision include the complexity of the factual and legal issues in the case, as well as the pro se petitioner's ability to investigate facts and present claims. *Battle v. Armontrout,* 902 F.2d 701, 702 (8th Cir.1990). Courts have held, for example, that there was no abuse of a district court's discretion in failing to appoint counsel when no evidentiary hearing was required and the issues in the case had been narrowed, *see Terrovona v. Kincheloe,* 912 F.2d 1176, 1177 (9th Cir.1990), *cert. denied,* —— U.S. ——, 111 S.Ct. 1631, 113 L.Ed.2d 726 (1991), or the issues were "straightforward and capable of resolution on the record," *Ferguson v. Jones,* 905 F.2d 211, 214 (8th Cir.1990), or the petitioner had "a good understanding of the issues and the ability to present forcefully and coherently his contentions." *La Mere v. Risley,* 827 F.2d 622, 626 (9th Cir.1987).

■■■ Reese has indicated that he fully comprehended the issues in this case, which we believe were neither factually nor legally complex. Moreover, Reese presented his claims "forcefully and coherently," and met the court's procedural requirements. For example, without the assistance of counsel, Reese was able to provide the documents that the district court requested from him in its initial order. He also filed two motions to delay a final decision on his habeas corpus petition. There is no indication that he was in any way prejudiced by the delays he refers to, or that counsel could have appreciably simplified or improved upon his efforts.

In sum, we find no abuse of discretion in either the magistrate judge's or the district court's failure to appoint counsel for Reese. Nor does Reese present evidence that his case was prejudiced by not having counsel.

### VII.

The district court properly applied the presumption of correctness and denied Reese's allegations of ineffective assistance of counsel. The court did not abuse its discretion in failing to conduct an evidentiary hearing or to appoint counsel. We will affirm.