AMBRO, Circuit Judge,
Dissenting.
Because I do not agree with my colleagues that the in-court identification in this case was harmless, I respectfully dissent. The admission of Smoker’s testimony produced, I believe, a “substantial and injurious effect or influence in determining the jury’s verdict.” Hassine v. Zimmerman, 160 F.3d 941, 955 (3d Cir.1998). I thus consider the underlying question the majority did not need to address — whether the state court opinion was an unreasonable application of clearly established Su *386 preme Court precedent, 28 U.S.C. § 2254(d), and conclude that it was. For these reasons, I would reverse the District Court and grant Lambert a new trial.
I.
We have explained that “a constitutional trial error is not harmless if the court is in ‘grave doubt’ as to whether the error had a substantial and injurious effect or influence in determining the jury’s verdict.” Hassine, 160 F.3d at 955 (quoting O’Neal v. McAninch, 513 U.S. 432, 436, 115 S.Ct. 992, 130 L.Ed.2d 947 (1995)). Though the term “grave doubt” arguably connotes a more profound degree of uncertainty, this threshold is met when, “in the judge’s mind, the matter is so evenly balanced that he feels himself in virtual equipoise as to the harmlessness of the error.” O’Neal, 513 U.S. at 435, 115 S.Ct. 992. “The crucial inquiry is the ‘impact of the error on the minds of the jurors in the total setting.'” Hassine, 160 F.3d at 955 (quoting Yohn v. Love, 76 F.3d 508, 523 (3d Cir. 1996)).
My colleagues offer two reasons to support their conclusion of harmlessness.' First, they stress that “Smoker’s testimony did not have quite the bolstering effect that Lambert argues it had, for there was little doubt or equivocation on Strevell’s part [in his identification testimony].” To begin, I find in the record evidence of both equivocation and doubt by Strevell. For example, immediately following the robbery Strevell “was not able to tell anyone what [the] individual was wearing” and was unable to describe his hair or certain facial features. Similarly, he testified in a pre-trial hearing that another man in the courtroom bore a “very strong resemblance” to Lambert and that he had “some doubt” about his in-court identification.
Moreover, the strength of Strevell’s testimony does not change the fact that the jury in this case convicted Lambert almost exclusively on the basis of the two identification witnesses. “[I]t is ‘inappropriate to ask whether there was sufficient evidence to support the result, apart from the phase of the trial affected by the error.’ ” Id. (quoting Yohn, 76 F.3d at 523). We are properly concerned only with the potential effect of the error on the minds of the jurors in the total setting. In this case, because Smoker was one of only two witnesses who offered direct evidence of Lambert’s involvement in the crime, it seems clear to me that her testimony influenced the jury significantly. Thus I cannot agree with my colleagues’ conclusion that her testimony had no substantial and injurious effect or influence in the determination of the verdict.
My colleagues also note that “Smoker and Strevell provided conflicting accounts, a fact that weighs in favor of a finding of harmless error.” In my estimation, the corroborative, prejudicial effect of the witnesses’ testimony overwhelmingly outweighs any potential doubt that might have been caused by inconsistencies in the details they described. Put simply, it is much more significant that the witnesses both identified Lambert as a perpetrator of the crime than it is that they differed on his precise role. Both witnesses put Lambert in the bank. To this end, each witness’s testimony corroborated and bolstered the other’s and the jury’s verdict should be seen as the product of their cumulative effect.
II.
By failing to consider the totality of the circumstances as required by Supreme Court precedent and offering only a cursory, wholly unconvincing analysis of the reliability issue presented, the state court unreasonably applied Supreme Court precedent. The Supreme Court has explained *387 that, when assessing reliability, the “central question” is “whether under the ‘totality of the circumstances’ ” the identification gave rise to a “substantial risk of misidentification.” Neil v. Biggers, 409 U.S. 188, 199, 93 S.Ct. 375, 34 L.Ed.2d 401 (1972) (quoting Stovall v. Denno, 388 U.S. 293, 302, 87 S.Ct. 1967, 18 L.Ed.2d 1199 (1967)). To measure the totality of the circumstances, we evaluate at least five factors that may contribute to the risk of misidentification: “[1] the witness’ original opportunity to observe a defendant and [2] the degree of attention during that observation; [3] the accuracy of the initial description; [4] the witness’ degree of certainty when viewing a defendant or his image; and [5] the length of time between the crime and the identification procedure.” United States v. Emanuele, 51 F.3d 1123, 1128 (3d Cir.1995) (citing Biggers, 409 U.S. at 199-200, 93 S.Ct. 375; Manson v. Brathwaite, 432 U.S. 98, 114, 97 S.Ct. 2243, 53 L.Ed.2d 140 (1977); Gov’t of Virgin Is. v. Riley, 973 F.2d 224, 228 (3d Cir.1992); Reese v. Fulcomer, 946 F.2d 247, 258 (3d Cir.1991); United States v. Dowling, 855 F.2d 114, 117 (3d Cir.1988), aff'd, 493 U.S. 342, 110 S.Ct. 668, 107 L.Ed.2d 708 (1990)). The Supreme Court has routinely applied these five factors and has left no doubt that a consideration of the totality of the circumstances (if not precisely these five factors) is mandated.
In Emanuele, we stressed the importance of analyzing all of the Biggers factors in order to determine the reliability of an identification.[1] We noted, for example, that “the sincerity or truthfulness of the witness must be considered along with the other Biggers factors in order to determine whether the risk of misidentification still exists, notwithstanding a witness’ testimony to the contrary.” Emanuele, 51 F.3d at 1129 (emphasis added). Ultimately we concluded that “[t]he trial court failed to consider the ‘totality of the circumstances,’ such as ... the inability of the witness to recognize defendant in a photospread despite a sufficient opportunity to observe the robber at close range. The court thus failed to apply the correct legal standard. ” Id. (emphasis added).
In this case, the Superior Court’s failure to take into account the totality of the circumstances — notwithstanding its claim that it did so — was an objectively unreasonable application of Supreme Court precedent. The Superior Court considered only one of the five Biggers factors in concluding that Smoker’s in-court identification was reliable. Commonwealth v. Lambert, No. 1073 EDA 1999 (Pa.Super.Ct. Mar. 24, 2000) (unpublished mem. opinion). It based its conclusion that the challenged in-court identification was reliable solely on its belief that Smoker’s initial observation of Lambert was extremely reliable because it was “at close range in the throes of a situation where Lambert’s actions commanded her entire attention.” Lambert, No. 1073 EDA 1999. According to the Superior Court, Lambert’s actions “commanded [Smoker’s] entire attention” because she viewed him from the end of the barrel of a shotgun he allegedly pointed at her face. In effect, the Court concluded that because Smoker had a shotgun *388 1.5 feet from her face, her initial observation was so rehable as to overcome any evidence of unreliability. Id. Unlike the Supreme Court in Brathwaite and Biggers, the Superior Court reached this conclusion without discussing the evidence of unreliability.
And evidence of unreliability was pervasive.[2] The Superior Court ignored all of the following — the brevity of the encounter (approximately five seconds), Smoker’s positive identification of another individual in a photo array, her failure to identify Lambert in a subsequent photo array, the lapse of thirteen months between her testimony and the crime, her exposure to a photograph of Lambert in an article in the newspaper identifying him as the only suspect, Smoker’s knowledge that her boss would be testifying against Lambert, and the suggestive confrontation Smoker experienced outside the courtroom when Lambert passed by her escorted by uniformed officers on three occasions.
The majority accurately characterizes the highly deferential standard that governs our habeas analysis. This deference is not without its limits, however. In my view, this case presents an instance where a state court clearly failed to apply governing Supreme Court precedent with any diligence or rigor. The Superior Court simply made no effort to apply the Biggers factors or otherwise consider the totality of the circumstances as it was obliged to do.
In this context, I respectfully dissent.

. My colleagues rightly note that Emanuele was a case of direct, not habeas, review. It remains relevant, however, to our analysis of governing Supreme Court precedent. As we have explained, ''[i]n determining whether a state decision is an unreasonable application of Supreme Court precedent, this [C]ourt has taken the view that 'decisions of federal courts below the level of the United States Supreme Court may be helpful to us in ascertaining the reasonableness of state courts’ application of clearly established United States Supreme Court precedent.” ’ Fischetti v. Johnson, 384 F.3d 140, 149 (3d Cir.2004) (quoting Marshall v. Hendricks, 307 F.3d 36, 51 (3d Cir.2002)).

. In my estimation, the evidence of unreliability in this case far outweighs the evidence we found so compelling in Emanuele. There we concluded that Lorraine Woessner’s eyewitness identification of the defendant, Joseph Emanuele, was unconstitutionally unreliable. Woessner allegedly viewed Emanuele for several minutes in a bank lobby while a robbery was in progress. In this case, Smoker viewed Lambert for approximately five seconds, her face 1.5 feet from the end of the barrel of a shotgun. In an initial photo array shortly after the robbery, Woessner was unable positively to identify a suspect. Smoker positively identified another individual in her first photo array. In Emanuele, there was no second photo array, while in this case Smoker failed to identify Lambert a second time. There is evidence in this case, unlike in Emanuele, that, before successfully identifying Lambert for the first time, Smoker saw Lambert’s photograph in a newspaper, was aware that he was the only suspect, and further knew that her boss would be testifying against Lambert. Finally, as in Emanuele, Smoker was confronted by Lambert in the courthouse lobby. Unlike Woessner’s single exposure to Emanuele, however, Smoker saw Lambert (escorted by uniformed, armed guards) not once, but on three occasions, before entering the courtroom to identify him for the first time. In short, if the reliability of Woessner’s identification testimony in Emanuele was “bad,” the reliability of Smoker’s identification testimony was “very bad.”