UNITED STATES of America,
Plaintiff-Appellee,

v.

Kent Thomas L'ALLIER,
Defendant-Appellant.

No. 87–1460.

United States Court of Appeals,
Seventh Circuit.

Argued Oct. 2, 1987.

Decided Jan. 28, 1988.

Gerald C. Nichol, Madison, Wis., for defendant-appellant.

Daniel P. Bach, Asst. U.S. Atty., John R. Byrnes, U.S. Atty., Madison, Wis., for plaintiff-appellee.

Before BAUER, Chief Judge, and FLAUM and EASTERBROOK, Circuit Judges.

FLAUM, Circuit Judge.

Defendant-appellant, Kent Thomas L'Allier, was convicted of two counts of armed robbery under 18 U.S.C. §§ 2113(a) and (d).

L'Allier challenges his conviction on the grounds that: (1) the government's delay in indicting him violated the due process clause of the fifth amendment; (2) the district court's denial of his motion to suppress identification evidence was an abuse of discretion; (3) counts I and II of his indictment were improperly joined and the district court abused its discretion when it denied his motion to sever; and (4) the district court erred by permitting the introduction of certain evidence despite the government's failure to establish a complete chain of custody. We affirm.

I.

On October 29, 1984, a single armed robber took $7,940 from the Community State Bank of Eau Claire, Wisconsin. Witnesses described the robber as a man between five feet ten inches and six feet tall, 160 to 170 pounds, with a slim build. The robber wore a white hooded sweatshirt with the hood pulled up, dark gloves, dark glasses, a false mustache and a false beard. He fled the bank on foot into a nearby neighborhood. A few days before the robbery, a resident of Chippewa Street (a street near the bank) saw a man wearing a white sweatshirt with "USA" printed on the front "scouting" the neighborhood.

On April 22, 1985, the Community State Bank of Eau Claire was robbed again by a single armed robber. This time the robber took $3,085 from the bank, including $500 of prerecorded bait bills in $20 denominations.[1] Witnesses described the robber as a man with a slim build, between five feet eight inches and six feet tall, and weighing between 140 and 170 pounds. The robber wore a blue hooded sweatshirt, a green stocking cap, dark glasses, brown work gloves, a false mustache and a false beard. The robber was armed with a small chrome or silver plated revolver. He fled the bank on foot toward the homes on Chippewa Street.

From October 11, 1984 through October 17, 1984, L'Allier rented a room at the Westgate Motel in Eau Claire, Wisconsin under the name "Dennis Sigsworth." The defendant again rented a room at this hotel under this same alias from April 10, 1985 to April 16, 1985 and on several other occasions.

The defendant was arrested on an unrelated charge on June 24, 1985. When arrested, L'Allier identified himself as Dennis Sigsworth. The arresting officers found a small silver revolver wrapped in a green ski mask in L'Allier's car. L'Allier's car was then driven to the St. Croix County Sheriff's Department where it was sealed with evidence tape. Earl Clark and Mark Willink of the St. Croix Sheriff's Department conducted an inventory search of the car on June 25, 1985. At trial, Clark testified that during the inventory search of L'Allier's car they found three white hooded sweatshirts and at least one blue pullover. Willink testified that they found three white hooded sweatshirts, one of which had "USA" in red letters on the front, and two blue pullovers. They also found two pairs of brown work gloves. In addition, Clark and Willink found ten twenty dollar bills, seven of which were bait bills from the April 22, 1985 bank robbery. On July 10, 1985, the St. Croix Sheriff's Department released L'Allier's car and personal articles to his brother, Randy L'Allier. An FBI agent retrieved three sweatshirts, one plain white, one blue and one white with the letters "USA" printed on it, from Randy's home on July 16th.

On October 8, 1986, a federal grand jury indicted L'Allier on two counts of armed bank robbery in violation of 18 U.S.C. §§ 2113(a) and (d). The first count charged L'Allier with the October 29, 1984 armed bank robbery of the Community State Bank of Eau Claire, Wisconsin. Count II charged the defendant with the April 22, 1985 armed robbery of the same bank. The defendant moved to dismiss his indictment on the basis of impermissible prein-

---

1. To create "bait" bills the government simply records the serial number of each bill. The bait bills are given to the bank and the tellers are instructed to dispense them in the event of a robbery. When the bills are recovered from a suspect, the government can trace them to the bank by comparing their serial numbers with the list of prerecorded serial numbers.

dictment delay. The district court denied the motion. Before trial, L'Allier also moved to have counts I and II of his indictment severed. L'Allier argued that severance was required because the crimes charged in the two counts were not sufficiently related. L'Allier also asserted that severance was necessary on the ground that the government's case on count II was much stronger than its case on count I. This disparity in the strength of the government's evidence, L'Allier argued, would prejudice his defense and cause a jury to convict him on both counts, even though standing alone there was not enough evidence to prove guilt beyond a reasonable doubt on count I. The district court also denied this motion.

At trial, L'Allier moved to suppress any in-court identification of himself by Rick Iverson, a government witness, on the ground that Iverson's identification would be based on an impermissibly suggestive pretrial identification procedure. Iverson testified that he saw the defendant outside the Eau Claire bank just prior to the April 22, 1985 robbery, but admitted that he had been shown a pretrial photo display. The district court held that the pretrial identification procedure was not impermissibly suggestive and therefore denied L'Allier's suppression motion. Finally, L'Allier sought to prevent the introduction into evidence of several sweatshirts because the government could not establish a complete chain of custody. The district court admitted the sweatshirts over L'Allier's objection.

A jury found L'Allier guilty of both armed bank robberies. The district court sentenced L'Allier to two consecutive ten year prison sentences, and to an additional five year prison term on each count pursuant to the enhancement provisions of 18 U.S.C. § 924(c). The five year enhancement sentences are concurrent with one another and consecutive to the initial ten year sentences.

II.

L'Allier first argues that the district court erred in denying his motion to dismiss his indictment. L'Allier claims that excessive pre-indictment delay actually and substantially prejudiced his defense in violation of the due process clause of the fifth amendment. L'Allier was arrested on charges unrelated to the bank robberies on June 24, 1985. The following day, the St. Croix Sheriff's Department performed an inventory search of his car which revealed evidence linking L'Allier to both armed robberies. L'Allier was not indicted for the armed bank robberies, however, until October 8, 1986—two years after the first robbery and sixteen months after the search of his car revealed evidence related to those crimes. L'Allier argues that this delay was excessive and caused him actual and substantial prejudice in the presentation of his defense.

L'Allier claims actual and substantial prejudice to his defense in two different forms. First, L'Allier asserts that as a result of the delay his memory of the events of October 29, 1984 and April 22, 1985 was diminished. Thus, L'Allier argues, he was unable to assist his counsel because he could not recall his whereabouts and activities on the dates of the robberies. Second, L'Allier alleges that he was prejudiced by a similar memory loss on the part of the witnesses to the bank robberies. L'Allier argues that the witnesses' faded memories prejudiced his defense because the witnesses could not clearly recall whether or not he was actually the person they saw robbing the bank on those dates. There is no evidence, apart from L'Allier's allegations, that he or any witness to the robberies was actually unable to recall any of the events of October 29, 1984 or April 22, 1985.

■ The relevant statute of limitations provides the primary protection for defendants against prejudice that could result from excessive pre-accusation delay. *United States v. Marion*, 404 U.S. 307, 322, 92 S.Ct. 455, 464, 30 L.Ed.2d 468 (1971).[2] The

---

2. The purpose of a statute of limitations is to limit exposure to criminal prosecution to a

certain fixed period of time following the occurrence of those acts the legislature has de-

indictment in this case was returned well within the applicable statute of limitations.[3] The due process clause of the fifth amendment, however, does have a limited role to play in the protection of defendants' rights prior to indictment and the prevention of oppressive delay. *United States v. Lovasco*, 431 U.S. 783, 789, 97 S.Ct. 2044, 2048, 52 L.Ed.2d 752, *reh. denied*, 434 U.S. 881, 98 S.Ct. 242, 54 L.Ed.2d 164 (1977). Thus, an indictment must be dismissed pursuant to the due process clause if a defendant can show that the pre-indictment delay caused substantial prejudice to his or her right to a fair trial and the delay was intentionally designed to gain a tactical advantage over the defendant. *Marion*, 404 U.S. at 324, 92 S.Ct. at 465. The defendant bears the burden of showing actual and substantial prejudice to his or her defense resulting from the delay. *United States v. Brock*, 782 F.2d 1442, 1443 (7th Cir.1986).

While actual prejudice makes a due process claim ripe for adjudication, it does not make the claim automatically valid. *Lovasco*, 431 U.S. at 789, 97 S.Ct. at 2048. "[P]roof of prejudice is generally a necessary but not sufficient element of a due process claim," the reasons for the delay must be considered along with the prejudice to the defendant. *Id.* at 790, 97 S.Ct. at 2048–49. Even a short and necessary delay may actually and substantially prejudice a defendant's case, and yet "no one suggests that every delay-caused detriment to a defendant's case should abort a criminal prosecution." *Marion*, 404 U.S. at 324, 92 S.Ct. at 465. A court must therefore weigh the actual prejudice to the defendant against the reasons for the delay to determine whether a particular indictment must be dismissed pursuant to the due process clause. *Id.* at 325, 92 S.Ct. at 466. Thus, even if L'Allier can show actual and substantial prejudice to his defense as a result of the sixteen month pre-indictment delay, the indictment will not be dismissed if there was a legitimate reason for the delay.

L'Allier's only allegation of prejudice is that his and the witnesses' memories faded as a result of the delay. L'Allier, however, can point to no evidence in the record to substantiate this claim. Such unsupported allegations cannot establish actual or substantial prejudice to L'Allier's defense. *See Brock*, 782 F.2d at 1444 (Brock's unsubstantiated allegation that his memory may have faded was insufficient to establish actual and substantial prejudice); *United States v. Watkins*, 709 F.2d 475, 479 (7th Cir.1983) (a general assertion that delay prevented the defendant from accurately reconstructing events does not constitute a showing of substantial and actual prejudice). L'Allier's unsupported allegation of memory loss therefore does not constitute the requisite substantial prejudice required to prove a due process violation.

There is a conflict in this circuit as to whether the defendant or the government bears the burden of establishing the reasons for the pre-indictment delay once the defendant successfully shows actual and substantial prejudice. *See, e.g., Brock*, 782 F.2d at 1443 n. 1. Because we find that L'Allier failed to meet his burden of showing actual and substantial prejudice to his defense, we need not resolve this conflict. *United States v. Williams*, 738 F.2d 172, 175 (7th Cir.1984). We note, however, that

cided to punish by criminal sanctions. Such a limitation is designed to protect individuals from having to defend themselves against charges when the basic facts may have become obscured by the passage of time and to minimize the danger of official punishment because of acts in the far-distant past. Such a time limit may also have the salutary effect of encouraging law enforcement officials promptly to investigate suspected criminal activity.

*Marion*, 404 U.S. at 323, 92 S.Ct. at 465 (*quoting Toussie v. United States*, 397 U.S. 112, 114–15, 90 S.Ct. 858, 860, 25 L.Ed.2d 156 (1970)).

3. The applicable statute of limitations is set forth in 18 U.S.C. § 3282 which provides:

Except as otherwise expressly provided by law, no person shall be prosecuted, tried, or punished for any offense, not capital, unless the indictment is found or the information is instituted within five years next after such offense shall have been committed.

L'Allier was indicted two years after the first robbery, well within the five year statute of limitations.

the government was either unable or unwilling to explain the substantial delay in this case. The government makes no claim that the delay resulted from a continuing investigation, nor does it assert that additional information was sought or discovered during the sixteen months between L'Allier's arrest and indictment. The government had significant evidence linking L'Allier with the robberies as early as June 25, 1985; it is troubling that it took a full sixteen months from that date to indict him on these charges.

Because we find that L'Allier failed to meet his threshold burden of showing actual and substantial prejudice to his defense, we hold that the district court did not abuse its discretion in denying L'Allier's motion to dismiss his indictment.

### III.

L'Allier next argues that the district court erred when it permitted Rick Iverson, a government witness, to identify L'Allier in court as the person he saw outside the Community State Bank of Eau Claire just before the bank robbery on April 22, 1985. L'Allier argues that Iverson's in-court identification was tainted by an impermissibly suggestive pretrial photo line-up that was shown to Iverson on July 17, 1985. Thus, L'Allier claims there was a substantial likelihood that Iverson's in-court identification was the result of irreparable misidentification.

Suggestive confrontations are disapproved because they increase the risk that a conviction will be based on a misidentification. *Neil v. Biggers*, 409 U.S. 188, 198, 93 S.Ct. 375, 381, 34 L.Ed.2d 401 (1972). The court must consider the facts of each

case to determine whether or not "the photographic identification procedure was so impermissibly suggestive as to give rise to a very substantial likelihood of irreparable misidentification." *Simmons v. United States*, 390 U.S. 377, 384, 88 S.Ct. 967, 971, 19 L.Ed.2d 1247 (1968). If the confrontation procedure was impermissibly suggestive, an in-court identification will be permitted only if under the "totality of the circumstances the identification was reliable." *Biggers*, 409 U.S. at 199, 93 S.Ct. at 382.[4]

The defendant has the initial burden of establishing that the confrontation procedure was impermissibly suggestive. *United States v. Briggs*, 700 F.2d 408, 412 (7th Cir.), *cert. denied*, 462 U.S. 1110, 103 S.Ct. 2463, 77 L.Ed.2d 1340 (1983). Only if the defendant meets this initial burden will the court consider the admissibility of the identification under the "totality of the circumstances" test. *Id.* To meet his initial burden of proving that the photo line-up was impermissibly suggestive, L'Allier must show that there was a substantial likelihood that Iverson's identification was based on an irreparable misidentification. L'Allier has not met this threshold requirement.

Iverson was shown seven photographs and asked if he could identify the man he saw outside of the Community State Bank on the day of the second robbery. There is no evidence that the FBI agent who displayed the photographs said or did anything that would have suggested that Iverson should pick L'Allier's photograph from the line-up.[5] L'Allier argues that the photo line-up was impermissibly suggestive be-

4. The test for determining whether, based on the totality of the circumstances, an identification is reliable notwithstanding an impermissibly suggestive confrontation procedure was set forth in *Biggers*. The Court in *Biggers* stated that:

[T]he factors to be considered in evaluating the likelihood of misidentification include the opportunity of the witness to view the criminal at the time of the crime, the witness' degree of attention, the accuracy of the witness' prior description of the criminal, the level of certainty demonstrated by the witness

at the confrontation, and the length of time between the crime and the confrontation. *Biggers*, 409 U.S. at 199–200, 93 S.Ct. at 382.

5. In fact, as Iverson testified on cross-examination, he was unable to make a positive identification of L'Allier from the photo display. Iverson's inability to identify L'Allier from the photo line-up is relevant to the credibility of his in-court identification, not to its admissibility. *Briggs*, 700 F.2d at 413. The credibility of Iverson's identification was thus a question of fact properly left to the jury's consideration.

cause there were differences in the exposure and the quality of the photographs in the display. L'Allier also takes issue with the fact that two of the seven photographs were the type ordinarily used by the police, and one of those two pictures was the photograph of L'Allier. A review of the photographs, however, reveals that the asserted differences are minor and not suggestive.[6] Such minor differences standing alone do not establish that the confrontation procedure was impermissibly suggestive. *See United States v. Kimberlin*, 805 F.2d 210, 227 (7th Cir.1986), *cert. denied,* — U.S. ——, 107 S.Ct. 3270, 97 L.Ed.2d 768 (1987).

L'Allier failed to carry his burden of showing that there was a substantial likelihood of misidentification resulting from the photo line-up. We hold, therefore, that the district court did not err in permitting Iverson's in-court identification of the defendant.

### IV.

### A.

L'Allier also argues that his conviction must be reversed because counts I and II of his indictment were improperly joined under Rule 8(a) of the Federal Rules of Criminal Procedure. L'Allier claims that joinder of these counts was so prejudicial that he did not receive a fair trial. According to L'Allier, the only common element between counts I and II is that they both involved armed robberies of the same bank.

On appeal, the issue of whether joinder was proper is a question of law which we review *de novo. United States v. Shue*, 766 F.2d 1122, 1134 (7th Cir.1985). A conviction obtained under improperly joined counts can be reversed. *Id. See also United States v. Hedman*, 630 F.2d 1184, 1200 (7th Cir.1980), *cert. denied,* 450 U.S. 965, 101 S.Ct. 1481, 67 L.Ed.2d 614 (1981) ("Improper joinder under Rule 8 re-

quires mandatory severance."). Although a liberal joinder rule would promote judicial economy and expedition, it is undisputed that joinder can be prejudicial. Therefore, the benefits of joinder must be balanced against the defendant's right to a trial free of prejudice. *Holmes v. Gray*, 526 F.2d 622, 625 (7th Cir.1975), *cert. denied,* 434 U.S. 907, 98 S.Ct. 308, 54 L.Ed.2d 194 (1977).

The Federal Rules of Criminal Procedure perform part of this balance by permitting the joinder of offenses only when certain specified conditions are met. Rule 8(a) allows joinder of two or more offenses only "if the offenses charged, whether felonies or misdemeanors or both, are of the same or similar character or are based on the same act or transaction or on two or more acts or transactions connected together or constituting parts of a common scheme or plan." Fed.R.Crim.P. 8(a). Joinder of offenses on the ground that they are of the same or similar character is permissible if the "counts refer to the same type of offenses occurring over a relatively short period of time, and the evidence as to each count overlaps." *Shue*, 766 F.2d at 1134 (*quoting United States v. Rodgers*, 732 F.2d 625, 629 (8th Cir.1984)). This standard does not require that every piece of evidence of one offense be admissible in a separate trial on the other offense. Rather, the joinder rule "looks in a broader sense to whether the rules relating to 'other crimes' evidence have been satisfied." *Baker v. United States*, 401 F.2d 958, 975 (D.C.Cir.1968) (per curiam); *Holmes*, 526 F.2d at 625 n. 3.

The government argues that counts I and II of L'Allier's indictment were properly joined because they involve offenses of the same or similar character. We agree. Counts I and II charged L'Allier with the armed bank robbery of the same bank on two separate occasions, the

6. Our conclusion that the photo line-up was not impermissibly suggestive is further supported by the fact that Iverson originally pointed to another photograph and indicated that the individual had a nose similar to the person he had seen outside the bank. Iverson then tentatively identified L'Allier's photograph, but he indicated that he needed to see the individual in person in order to make a positive identification. Iverson clearly testified to these facts on cross-examination.

robberies occurred within six months of one another, and evidence of one robbery would have been admissible, with a proper limiting instruction, in a separate trial of the other robbery to establish the bank robber's *modus operandi*. The witnesses' descriptions of the perpetrator of both robberies were similar. The robberies occurred at the same time of day, both times a single armed robber entered the bank wearing a false mustache and beard, dark work gloves, and dark glasses. On both occasions the robber carried a small firearm and fled on foot into a nearby neighborhood. In both robberies the armed robber wore a hooded sweatshirt; the first time it was a white sweatshirt with the hood pulled up, the second time it was a blue sweatshirt with the hood down and a green ski cap. Prior to both robberies L'Allier was registered under the same false name at a motel in Eau Claire, Wisconsin. Finally, when L'Allier was arrested on June 24, 1985, evidence relating to both robberies was found in his car.

The extensive similarities between the bank robberies charged in each count, the overlap of evidence, and the relative closeness in time of the two crimes make joinder proper in this case under Rule 8(a). *See Shue*, 766 F.2d at 1134 (joinder proper where counts alleged robberies of different banks, robberies occurred fifteen months apart, robber used fake grenade in one robbery and fake or unloaded gun in the others). We hold therefore that joinder under Rule 8(a) was appropriate in this case.

### B.

 L'Allier asserts that even if joinder was proper, however, it was sufficiently prejudicial that severance was required under Federal Rule of Criminal Procedure 14 and the district court's denial of his motion for severance violated his right to due process under the fifth amendment. L'Allier alleges that he was prejudiced as a result

of the district court's denial of his severance motion because the jury was confused by the joinder and was unable to separate the evidence relevant to each robbery. Because the evidence against him was much stronger on the April 22, 1985 armed robbery (count II) than on the October 29, 1984 robbery (count I), L'Allier argues that he would not have been convicted on count I if the two counts had been severed and tried separately.

Rule 14 authorizes a district court to sever offenses if joinder would be prejudicial to either party.[7] *See, e.g., United States v. Shearer*, 606 F.2d 819, 820 (8th Cir.1979). The decision to grant or deny a motion for severance under Rule 14 is within the discretion of the district court. The district court's decision will not be reversed unless the party opposing the grant or denial of severance demonstrates a clear abuse of discretion. *United States v. Pavelski*, 789 F.2d 485, 491 (7th Cir.), *cert. denied*, —— U.S. ——, 107 S.Ct. 322, 93 L.Ed.2d 295 (1986); *United States v. Percival*, 756 F.2d 600, 610 (7th Cir.1985).

 To obtain severance, L'Allier must show actual prejudice resulting from the joinder of counts I and II, not merely that he would have a better chance of acquittal if the counts were severed. *Percival*, 756 F.2d at 610; *United States v. Abraham*, 541 F.2d 1234, 1240 (7th Cir. 1976), *cert. denied*, 429 U.S. 1102, 97 S.Ct. 1128, 51 L.Ed.2d 553 (1977). L'Allier has not established actual prejudice. The trial was short, the evidence was not complex, and the chronological nature of the evidence made it relatively simple for the jury to relate the evidence to the proper count. Most of the evidence relating to count II would have been admissible in a separate trial on count I. L'Allier therefore was not prejudiced by the district court's denial of his motion for severance. *See United States v. Garver*, 809 F.2d 1291, 1298 (7th Cir.1987) (defendants not prejudiced by de-

---

7. Rule 14 provides:
 If it appears that a defendant or the government is prejudiced by a joinder of offenses or of defendants in an indictment or information or by such joinder for trial together, the court *may* order an election or separate trials of counts, grant a severance of defendants or provide whatever other relief justice requires....
 Fed.R.Crim.P. 14 (emphasis added).

nial of motion for severance where evidence would have been admissible in separate trials).

In addition, the jury was specifically instructed to consider the evidence relating to each count separately and to render a separate verdict on each count. "Our theory of trial relies upon the ability of a jury to follow instructions." *Percival,* 756 F.2d at 610 (*citing Opper v. United States,* 348 U.S. 84, 95, 75 S.Ct. 158, 165, 99 L.Ed. 101 (1954)). We believe that the jury was able to follow the clear limiting instructions given by the district court in this case. We hold therefore that the district court did not abuse its discretion in denying L'Allier's motion for severance.

## V.

 L'Allier's final argument is that the district court erred when it permitted the government to introduce into evidence several sweatshirts which allegedly belonged to the defendant. L'Allier argues that it was error to admit these sweatshirts because the government was unable to establish a complete chain of custody. Clark and Willink, of the St. Croix Sheriff's Department, found several sweatshirts when they conducted an inventory search of L'Allier's car. The sweatshirts and the car were released to the defendant's brother, Randy L'Allier, on July 10, 1985. An FBI agent retrieved three sweatshirts from Randy's home (although not from Randy personally) on July 16th, but the government cannot conclusively demonstrate that the sweatshirts that were recovered were the same ones that were released to Randy on July 10th. There is therefore a break in the chain of custody.

A district court has "broad discretion to determine the admissibility of evidence." *United States v. Hattaway,* 740 F.2d 1419, 1424 (7th Cir.), *cert. denied,* 469 U.S. 1089, 105 S.Ct. 599, 83 L.Ed.2d 708 (1984). We will not disturb a district court's evidentiary ruling unless there is a clear showing of abuse of discretion. *United States v. Wheeler,* 800 F.2d 100, 106 (7th Cir.1986). The district court admitted the sweatshirts, but specifically limited the government to

arguing only the inference that the sweatshirts the FBI agent retrieved from Randy L'Allier's home were the same ones the St. Croix Sheriff's Department found in the defendant's car. The district court was correct in concluding that "any discrepancies in the chain of custody go the weight of the evidence, not its admissibility." *United States v. Shackleford,* 738 F.2d 776, 785 (7th Cir.1984). We hold that the court did not abuse its discretion in admitting the sweatshirts into evidence notwithstanding the break in the chain of custody.

## VI.

In conclusion, we hold that: (1) the government's sixteen month pre-indictment delay, although lengthy and unexplained, did not violate L'Allier's fifth amendment right to due process because he failed to demonstrate actual and substantial prejudice to his defense as a result of the delay; (2) the district court did not abuse its discretion in permitting Rick Iverson to identify L'Allier in court; (3) counts I and II of the indictment were properly joined and the district court did not abuse its discretion by denying L'Allier's motion to sever these offenses; and (4) the district court did not err in permitting the introduction of several sweatshirts into evidence notwithstanding a break in the chain of custody. We therefore affirm L'Allier's conviction in all respects.