**UNITED STATES of America,
Plaintiff–Appellant,**

v.

**Jerry MUZIKA, Defendant–Appellee.**

**No. 92–1552.**

United States Court of Appeals,
Seventh Circuit.

Argued Nov. 13, 1992.

Decided Feb. 4, 1993.

David S. Rosenbloom, Barry R. Elden, Jerome N. Krulewitch, Asst. U.S. Attys., Office of the U.S. Atty., Criminal Receiving, Appellate Div., Chicago, IL, for plaintiff-appellant.

Michael D. Monico, Barry A. Spevack, Monico, Pavich & Spevack, Chicago, IL, for defendant-appellee.

Before CUMMINGS and COFFEY, Circuit Judges, and WOOD, JR., Senior Circuit Judge.

# 1052

CUMMINGS, Circuit Judge.

Defendant Jerry Muzika tells us that his fatal flaw is a fanatical passion for collecting guns, born of an unsuccessful effort to gain the love of his father. Unfortunately for the son, he also acquired a taste for selling firearms—in this case to an undercover agent for the Bureau of Alcohol, Tobacco and Firearms—including two $4,000 M–60 machine guns, a silencer without a serial number for an Inter–Tec 9 pistol, live hand grenades also without serial numbers, and a Browning Automatic Rifle (O.R. 6). A search of Muzika's house also turned up an Uzi machine gun, a .45 caliber Thompson sub-machine gun, and a Saco–Lowell machine gun, none of which had been registered. Under these circumstances, Muzika agreed to plead guilty to conspiring with one Thomas Gibe to engage knowingly and unlawfully in the business of dealing and transferring firearms. In return, the United States government agreed to tell the court of the defendant's cooperation and to recommend a downward departure from the sentencing guidelines such that Muzika would receive a twelve-month prison sentence. Without articulating a substantive reason, and contrary to the plea agreement between the parties, Judge Lindberg sentenced defendant to five years' probation in lieu of a prison term and instructed him to perform 250 hours of community service. The court also dismissed all remaining counts against Muzika "on the motion of the United States," though the government made no such motion. Because of these irregularities, we are forced to reverse the district court's judgment and remand so that Muzika can be sentenced properly.

In August 1990, Muzika was charged in a twenty-seven-count indictment. The first count charged him with participating in an illegal conspiracy with Gibe to possess and transfer firearms in violation of 18 U.S.C. § 371. The remaining counts charged him with various substantive firearms offenses in violation of 26 U.S.C. §§ 5812, 5822, 5841, 5861 and 5871. Although the indictment was in twenty-seven counts (O.R. 6), the second, twenty-sixth and twenty-seventh counts named Gibe alone.[1] Muzika agreed to plead guilty to count one which carried a potential sentence of five years' imprisonment, a $250,000 fine, a term of supervised release, and whatever restitution might be ordered by the court (O.R. 60 at 6–7). Specifically, defendant admitted under the guilty plea to selling three machine guns, a silencer and four hand grenades to an undercover agent for $13,500. Since his wife was not fond of her husband's passion for firearms, and the illegal automatic weapons he coveted exceeded the family budget, Muzika earned extra money by selling weapons to individuals who, it turned out, were federal agents. The probation officer assured the district court, though, that Muzika's motives were pure; he naively believed that the purchasers of these weapons were non-violent enthusiasts such as himself (O.R. 92 at 13–14).

The vital part of the written plea agreement between Muzika and the government called for a sentence of one-half of the low end of the applicable guidelines range, namely, twelve months (O.R. 60 at 10, O.R. 84 at 2). The probation officer agreed with that length of imprisonment and informed the judge that "[p]robation is not authorized by the guidelines." He also advised the court that if it accepted the plea agreement it could alter any term except the agreed-upon length of incarceration (O.R. 92 at 14, 16). The probation officer recommended that the defendant serve a period of two years' supervised release in addition to the year in prison, pay a minimum fine of $6,000 and participate in mental health treatment. In return for the comparatively low sentence, the defendant agreed not to contest forfeiture of the various firearms and ammunition that federal agents had taken from him, and the government agreed to move to dismiss counts three

---

1. After being sentenced, defendant testified at Gibe's sentencing hearing under count twenty-six. Gibe received a forty-one month prison term under that count while counts one, two and twenty-seven were dismissed on the government's motion (see defendant's app. at A–2 and A–3).

through twenty-five of the indictment. The plea explicitly provided that if the district court refused to impose the twelve-month incarceration, the agreement would become null and void. According to the agreement:

> Other than the agreed term of incarceration, the parties have agreed that the Court remains free to impose whatever sentence it deems appropriate. If the Court accepts the agreed sentence component set forth, the defendant may not withdraw this plea as a matter of right under Federal Rule of Criminal Procedure 11(e)(2) and (4). If, however, the Court refuses to impose the agreed sentence component set forth herein, thereby rejecting the plea agreement, or otherwise refuses to accept the defendant's plea of guilty, this agreement shall become null and void and neither party will be bound thereto.

(O.R. 60 at 10).

At a hearing on December 12, 1991, District Judge Lindberg rejected the plea arrangement. He first found that the sentencing guidelines dictated a base offense level of sixteen, then enhanced the level to nineteen because, according to his computation, Muzika sold eight rather than four weapons. Judge Lindberg proceeded to reduce the offense level two points to seventeen, rather than the three points that defendant's attorney requested, because of Muzika's cooperation in the case against Gibe. The judge stated that Muzika's clean record should have dictated a sentence of twenty-four to thirty months, but he noted that "[w]ith a downward departure for substantial assistance, you would arrive at 12 months" as provided in the plea agreement (government's app. at A–16). Nevertheless, the judge took "into account matters which the Court does not believe the guidelines adequately account for in this particular case" and only sentenced the defendant to five years' probation and community service (O.R. 79 at 27–

28). The court's only other statement of its reasons for scrapping the plea was "that Mr. Muzika now has one of the best opportunities that this court has seen in recent times, to use constructive resources and techniques to reorder his life in such a way as to maximize the potential for keeping his family together and to resume a law-abiding career" (O.R. 79 at 26).

One month later on January 13, 1992, the government received a copy of the final probation judgment[2] against the defendant which indicated that all other charges were dismissed "on the government's motion" (O.R. 84 at 1). However, the government had never filed such a motion. The plea agreement did provide that these charges were to be dismissed, but only if the judge accepted the prescribed twelve-month term of imprisonment, which he did not. On January 23 the United States filed a motion to correct the judgment. Judge Lindberg denied the motion on the same day, holding that he lacked authority under Federal Rule of Criminal Procedure 35(c)[3] to correct any error in Muzika's sentence because it had been imposed on December 12, 1991, more than seven days before (government's app. at A–26–A–27), even though the judgment was not docketed until a week after the government's motion was filed (government's app. at A–19). The court also found that, while it did have authority to reinstate counts three through twenty-five, it would not do so because there had been no error. The judge reasoned that the government was still obliged to dismiss these counts under the plea agreement, which he considered to remain in force despite the court's imposition of a different punishment than the one bargained for and agreed to by Muzika and the United States (government's app. at A–28), thus ignoring the provision in the plea agreement that rendered it null and void absent a twelve-month prison term (government's app. at A–10).

---

**2.** The judgment was not docketed until January 30, 1992 (government's app. at A–19).

**3.** Rule 35(c) was intended to apply to technical errors but not to "a plainly illegal sentence"

such as this. 28 U.S.C. § 2255 would be available in such an instance. FED.R.CRIM.P. 35(c) advisory committee's note.

■ Rule 11(e)(1)(E) of the Federal Rules of Criminal Procedure provides that the government and defendant may arrive at a bargain that a specific sentence is the appropriate disposition of a case. *United States v. Benchimol*, 471 U.S. 453, 455, 105 S.Ct. 2103, 2104–05, 85 L.Ed.2d 462 (1985). Plea agreements are contracts. *United States v. Sophie*, 900 F.2d 1064, 1071 (7th Cir.1990), certiorari denied, *Duque v. United States*, 498 U.S. 843, 111 S.Ct. 124, 112 L.Ed.2d 92; *United States v. Ataya*, 864 F.2d 1324, 1329 (7th Cir.1988). The existence and meaning of these contracts are determined by ordinary contract principles of offer and acceptance. *United States v. Delegal*, 678 F.2d 47, 50 (7th Cir.1982). The agreements are governed by an objective standard, *United States v. Fields*, 766 F.2d 1161, 1168 (7th Cir.1985), and we must inquire about the parties' reasonable expectations. *Sophie*, 900 F.2d at 1071. The judge is, of course, free to accept or reject the package negotiated by the defendant and the prosecutor, *Benchimol*, 471 U.S. at 455, 105 S.Ct. at 2104–05, but all bets are off if the judge spurns the agreement.

■ In the instant case, the agreement was very clear that the government was only required to fulfill its part of the bargain—including moving to dismiss counts three through twenty-five—if the judge accepted the agreed-upon prison term. The plea agreement between Muzika and the United States said specifically that *"[o]ther than the agreed term of incarceration, the parties have agreed that the Court remains free to impose whatever sentence it deems appropriate"* (emphasis added). Assuming for the moment that he could justify a departure from the sentencing guidelines, Judge Lindberg was within his power in scuttling the plea agreement between Muzika and the government. However, he could not both reject the agreement and still hold the government to its agreement to dismiss the remaining counts. He could have dismissed counts three through twenty-five on his own initiative, but the judge's sole reason for dismissing the counts was a never-made prosecutorial request! When the district court settled the incarceration phase of the agreement, it also scuttled the government's agreement to move to dismiss the balance of the indictment. Thus the judge's conclusion that he was able to hold that "all remaining counts are dismissed on the government's motion" under the plea agreement and yet sentence Muzika to five years' probation is incomprehensible and an abuse of discretion. See, *e.g.*, *United States v. Olson*, 846 F.2d 1103, 1115 n. 11 (7th Cir.1988), certiorari denied, 488 U.S. 850, 109 S.Ct. 131, 102 L.Ed.2d 104 (analyzing district court decision to dismiss indictment for abuse of discretion); see also *United States v. Fountain*, 840 F.2d 509, 512 (7th Cir.1988), certiorari denied, 488 U.S. 982, 109 S.Ct. 533, 102 L.Ed.2d 564; *United States v. L'Allier*, 838 F.2d 234, 242 (7th Cir.1988).

■ If the judge's dismissal of counts three through twenty-five was inexplicable, his reduction of Muzika's sentence to parole was inadequately explained. This Court reviews decisions to depart from the range specified in the sentencing guidelines under a reasonableness standard. *United States v. Miller*, 874 F.2d 466, 471 (7th Cir.1989). Yet we cannot judge reasonableness without reasons. Significant departures—those of more than two levels—must be "explained with a care commensurate with their exceptional quality." *United States v. Thomas*, 930 F.2d 526, 531 (7th Cir.1991), certiorari denied, —— U.S. ——, 112 S.Ct. 171, 116 L.Ed.2d 134 (quoting *United States v. Ferra*, 900 F.2d 1057, 1064 (7th Cir.1990)). A district court must explain its reasons for both the departure and its extent. *United States v. Himsel*, 951 F.2d 144, 147 (7th Cir.1991). All Judge Lindberg said in the instant case was that the guidelines did not adequately account for certain unspecified factors in Muzika's case. However, a judge's "personal disagreement with the guidelines does not provide a reasonable basis for sentencing." *United States v. Scott*, 914 F.2d 959, 963 (7th Cir.1990) (quoting *United States v. Lopez*, 875 F.2d 1124, 1126 (5th Cir.1989)). The judge, of course, could have described specific mitigating circumstances favoring Muzika and departed from the guidelines accordingly. It is impossible to evaluate

these circumstances, though, if the district court does not say what they are. This lack of an acceptable explanation is fatal to Muzika's sentence.

■ Moreover, the district court gave no notice of its intent to depart on grounds other than the defendant's substantial assistance, which already had been recognized in the twelve-month incarceration agreed upon by the parties. This lack of notice violates *Burns v. United States,* — U.S. —, — n. 4, —, 111 S.Ct. 2182, 2185 n. 4, 2187, 115 L.Ed.2d 123, which established that the sentencing court must give notice to both the government and the defendant of an upward departure, and *United States v. Andruska,* 964 F.2d 640, 643–644 (7th Cir.1992), which applies *Burns* to downward departures as well. This failure of notice is an additional reason why the sentence of the defendant must be reversed.

■ Despite Muzika's contention, the government did not waive its right to appeal even though it failed to object at the sentencing hearing. The prosecutor could not have appealed the departure before sentencing because the judge had neglected to give the government notice under *Burns* and *Andruska.* Although the prosecutor did not object after sentencing either, he claims to have informed Muzika's counsel informally after the hearing that there would be an appeal.[4] While the prosecutor could have been more aggressive in stating his disagreement with the district judge, it is obvious that both the court and Muzika knew the government was not pleased by the sentence which contravened the plea agreement and probation officer's recommendation. In any event, Muzika has produced no authority for the proposition that a party must object to a final judgment at the time it is imposed in order to reserve its right to appeal. In *United States v. Vogt,* 901 F.2d 100, 102 (8th Cir. 1990), a case cited by defendant, the government waived its right to complain about a defendant's alleged breach of a plea

agreement by waiting ten weeks after it learned of the breach. In the meantime, the government continued to receive the benefits of the agreement. In the instant case, there is no evidence that the government unduly delayed in appealing the sentence. Even if it did not give defendant notice that it would appeal the sentencing judgment, permission from the Solicitor General of the United States must be obtained before the government can appeal. Therefore, it would have been premature at the time of sentencing for the government to advise the defendant definitively that it intended to contest the sentence. In any event, there is no such requirement.

For the foregoing reasons, the judgment is reversed and the case is remanded for resentencing. Circuit Rule 36 shall apply.

---

**4.** Since the government has conceded that this information does not appear on the record (reply br. at 6, n. 6), defendant's motion to strike that information from the government's reply brief at 6–7 is granted.