19 F.3d 22
 NOTICE: Seventh Circuit Rule 53(b)(2) states unpublished orders shall not be cited or used as precedent except to support a claim of res judicata, collateral estoppel or law of the case in any federal court within the circuit.
UNITED STATES of America, Plaintiff-Appellee,
v.
Joseph A. PROULX, Defendant-Appellant.
 No. 93-1269.
 United States Court of Appeals, Seventh Circuit.
 Argued Dec. 10, 1993.
Decided March 22, 1994.
 
 1
 Before EASTERBROOK and ROVNER, Circuit Judges, and REINHARD, District Judge*.
 
 ORDER
 
 2
 Between late 1988 and early 1990, Joseph Proulx was engaged in the distribution of cocaine in the Somerset area of Western Wisconsin. Proulx's immediate sources for the cocaine were two Wisconsin residents, Gary Kammerud and Arnie Stoeberl. After a jury trial, Proulx was found guilty on seven counts of a nine-count indictment which charged him with two separate conspiracies: the "Kammerud conspiracy", encompassing October 1989 through February 1990, and the "Stoeberl conspiracy", encompassing December 1988 through February 1990. On Counts VIII and IX, he was ordered to serve a mandatory minimum sentence of 120 months of incarceration. On Counts I, II, III, VI, and VII, he was sentenced to a concurrent term of 77 months.
 
 
 3
 Two issues have been presented for review. Proulx first contends that the district court erred in refusing to sever the two conspiracies, thereby prejudicing his right to a fair trial. Before we can examine the question of severance, we must determine whether joinder was proper. United States v. Donaldson, 978 F.2d 381, 391 (7th Cir.1992). This is a question of law that we review de novo. Id.
 
 
 4
 Rule 8(a) of the Federal Rules of Criminal Procedure provides:
 
 
 5
 Two or more offenses may be charged in the same indictment or information in a separate count for each offense if the offenses charged, whether felonies or misdemeanors or both, are of the same or similar character or are based on the same act or transaction or on two or more acts or transactions connected together or constituting parts of a common scheme or plan.
 
 
 6
 There can be no question that this case is a textbook example of proper joinder under Rule 8(a). The counts of the indictment involve the same types of offenses occurring during an approximately 15-month period, and the evidence as to each of the counts overlaps. See Donaldson, 978 F.2d at 391; United States v. L'Allier, 838 F.2d 234, 240-41 (7th Cir.1988); United States v. Shue, 766 F.2d 1122, 1134 (7th Cir.1985). The conspiracies for which Proulx was convicted involved the distribution of cocaine received from his two sources in an overlapping time period. It would have been impossible for the government to delineate from which source Proulx received the cocaine he sold. Indeed, even the quantity he bought from both Kammerud and Stoeberl was usually the same--two ounces. See generally United States v. Zafiro, 945 F.2d 881, 886 (7th Cir.1991) ("[T]he benefit of the joint trial went beyond the avoidance of duplication. The jury was given the full picture, which it would not have [otherwise].... Joint trials, in this as in many other cases, reduce not only the direct costs of litigation, but also error costs."), aff'd, 113 S.Ct. 933 (1993).
 
 
 7
 Once joinder has been determined to have been proper, we review a district court's denial of a severance motion for an abuse of discretion. Donaldson, 978 F.2d at 391; United States v. Hogan, 886 F.2d 1497, 1506 (7th Cir.1989); United States v. Moya-Gomez, 860 F.2d 706, 754 (7th Cir.1988), cert. denied, 492 U.S. 908, 109 S.Ct. 3221 (1989). "In order to appeal successfully the denial of a severance motion, a defendant must establish actual prejudice resulting from the denial. Actual prejudice means that the defendant could not have a fair trial without severance, not merely that a separate trial would offer him a better chance of acquittal." United States v. Balzano, 916 F.2d 1273, 1281 (7th Cir.1990) (internal quotation marks and citations omitted).
 
 
 8
 The district judge did not abuse her discretion here. Indeed, not only could Proulx show no actual prejudice,[1] it is quite possible, as was noted during oral argument, that absent joinder, Proulx might have been subject to separate trials that would have resulted in longer sentences of incarceration. At the same time, even if each conspiracy charge had been tried separately, evidence of the other conspiracy might well have been admissible under Fed.R.Evid. 404(b) in order to prove Proulx's intent, a likelihood that confirms the propriety of the joint trial. E.g., Moya-Gomez, 860 F.2d at 768.
 
 
 9
 Even if Proulx's severance motion were meritorious, however, he has waived the issue. Although his attorney made a pre-trial motion for severance, he did not renew the motion at the close of the evidence. We have held that absent a showing of futility, a motion for severance is typically waived if it is not renewed at the close of evidence, because it is at that juncture that any prejudice which may have resulted from the joint trial would be ascertainable. United States v. Taglia, 922 F.2d 413, 416-17 (7th Cir.), cert. denied, 111 S.Ct. 2040 (1991); United States v. Caudill, 915 F.2d 294, 298 (7th Cir.1990); United States v. Brown, 870 F.2d 1354, 1360 (7th Cir.1989).
 
 
 10
 Proulx's second issue on appeal involves his sentence. He argues that even if a joint trial on the two separate conspiracies was appropriate, it was inappropriate to group for purposes of sentencing the total amount of drugs involved in both conspiracies. This contention need not detain us for long.
 
 
 11
 We start from the proposition that for sentencing purposes, we are dealing with one course of conduct when a defendant purchases cocaine from multiple suppliers. In fact, if we assume that Kammerud and Stoeberl had been partners rather than independent suppliers, Proulx would have received an identical sentence. It should be no different under the present scenario.
 
 
 12
 A district court's calculation of the quantity of drugs involved in an offense is a finding of fact, which we review under a clearly erroneous standard. United States v. Montgomery, No. 92-2153, slip op. at 12, 14 F.3d 1189 (7th Cir. Jan. 24, 1994).
 
 At sentencing, Judge Crabb stated:
 
 13
 First of all, I find that it is appropriate to consolidate all of the cocaine involved in the conspiracy with Mr. Kammerud and the cocaine involved in the conspiracy with Mr. Stoeberl. The pattern of conduct that was revealed at the trial indicated that Mr. Proulx was obtaining cocaine for distribution from whatever source he could obtain it, and the fact that sometimes he got it from Mr. Kammerud and sometimes he got it from Mr. Stoeberl doesn't really change the pattern of conduct in which he was engaged, which was to obtain cocaine, cut it approximately 50-50 and then distribute it.
 
 
 14
 I also find that it is not even a close question about the amount of cocaine that was involved. That it easily exceeds 500 grams.
 
 
 15
 Mr. Kammerud's testimony, Ms. Stickney's testimony, Ms. Friday's testimony all indicate that Mr. Proulx was obtaining cocaine in the Kammerud conspiracy in at least--at least ten ounces, probably considerably more, and that he obtained at least ten ounces through Mr. Stoeberl, and from all indications, all of that cocaine was cut 50-50, which as Mr. Anderson pointed out, doubles the amount involved.
 
 
 16
 Even without cutting it, though, it's clearly more than 18 ounces. From the evidence that I can find by a preponderance, there was a lot of cocaine involved in this case. Certainly more than the 500 grams that is the cutoff.
 
 
 17
 Having reviewed the entire trial testimony, we agree with Judge Crabb's assessment. Adding the cocaine from the two conspiracies totals a minimum of twenty-two ounces, which is equivalent to approximately 628 grams. Even if we do not take into account the cocaine involved in the two counts of the Kammerud conspiracy for which Proulx was acquitted, Proulx is accountable for distributing eighteen ounces, or approximately 514 grams. Thus, we need not consider the testimony, which was ample, that Proulx regularly used a cutting agent to double the amounts of cocaine he purchased and which under the case law may be counted in arriving at the amount attributable to the defendant for sentencing purposes. U.S.S.G. Sec. 2D1.1; Chapman v. United States, 500 U.S. 453, 111 S.Ct. 1919, 1926, 1927-28 (1991); United States v. Johnson, 999 F.2d 1192, 1196-97 (7th Cir.1993). There can be no question that Proulx distributed more than the 500 grams which required that he serve the mandatory minimum sentence of 120 months under the U.S. Sentencing Guidelines.
 
 
 18
 Proulx was convicted by overwhelming evidence, and the district court properly calculated the relevant drug quantity for sentencing purposes. His conviction and sentence must therefore be AFFIRMED.
 
 
 
 *
 Judge Philip G. Reinhard, of the Northern District of Illinois, sitting by designation
 
 
 [1]
 For example, although the evidence concerning the two conspiracies overlapped, the record does not suggest that this case was not so complex that the jury would have been unable to follow the judge's instruction to consider each charge and the evidence relating to it separately. See Balzano, 916 F.2d at 1281-82; L'Allier, 838 F.2d at 241