**UNITED STATES of America,
Plaintiff–Appellee,**

v.

**Norman H. HUNTER, Defendant–
Appellant.**

**No. 99–1963.**

United States Court of Appeals,
Seventh Circuit.

Argued Sept. 24, 1999.

Decided Nov. 23, 1999.

Lisa Griffin (argued), Department of Justice, Chicago Strike Force, Chicago, IL, for plaintiff–appellee.

Timothy P. O'Connor (argued), Greg J. Miarecki, Winston & Strawn, John A. Meyer, Chicago, IL, for defendant–appellant.

Before BAUER, RIPPLE and DIANE P. WOOD, Circuit Judges.

BAUER, Circuit Judge.

A jury convicted Norman Hunter ("Hunter") on nine counts of possessing checks that had been stolen from the United States mail in violation of 18 U.S.C. § 1708 and one count of conspiracy to possess stolen mail in violation of 18 U.S.C. § 371. Hunter's only argument on appeal challenges the district court's decision denying his pretrial motion to dismiss the indictment for pre-indictment delay. For the following reasons, we affirm the district court.

## I. BACKGROUND

In 1993, Hunter worked as a letter carrier for the United States Postal Service at the Chicago Lawn Postal Station. After someone tipped off Postal Inspectors that Hunter was delivering the mail while under the influence of heroin, Hunter and his wife, Katrina Hunter ("Katrina"), became the targets of an investigation into mail theft. Posing as a buyer of stolen checks, an undercover Postal Inspector contacted Katrina in September 1993, and on ten separate occasions over the next three months, purchased 49 stolen checks with a combined face value of $19,777 from Katrina. Unbeknownst to Katrina, the Postal Inspector tape recorded each of their transactions, as well as some of their phone conversations. During her meetings and phone conversations with the Postal Inspector, Katrina repeatedly stated that Hunter stole the checks and gave them to her to sell. On four occasions, the Postal Inspector met directly with Hunter,

and during one of those meetings paid Hunter $1,000 for stolen checks. The Postal Inspector also tape recorded his meetings with Hunter. Authorities arrested both Hunter and Katrina on November 4, 1993 for their roles in this scheme.

The day after their arrest, the government filed separate criminal complaints against Hunter and Katrina. On November 9, 1993, the district court appointed an attorney for Hunter and released him on bond. One week later, the Assistant United States Attorney ("AUSA") then assigned to the case furnished Hunter's attorney with a copy of the Postal Inspector's case report. On December 2, 1993, the government filed an agreed motion to dismiss the complaint against Hunter because the government was finalizing an information and discussing a proposed plea agreement with Hunter. The trial court granted the motion and dismissed the case without prejudice.

A couple of months later, in February 1994, the government turned over some of the tape recorded conversations between the Postal Inspector and Katrina to Hunter's attorney. Hunter and his attorney reviewed the tapes and anticipated receiving a proposed plea agreement, but none was forthcoming. Eight months passed and neither Hunter nor his lawyer heard anything from the government. In October 1994, the government again inquired about the possibility of a plea agreement. Hunter's attorney again asked the government to tender a proposed plea agreement, but did not receive a draft plea agreement until nine months later on July 30, 1995. Five days after reviewing the proposed plea agreement, Hunter's attorney informed the government that Hunter would not plead guilty and that he wanted to proceed to trial.

Nearly two years passed and nothing happened. Then, in the summer of 1997, the case was reassigned to a new Assistant United States Attorney. The new AUSA contacted Hunter's attorney on August 25, 1997 and asked whether Hunter would consider changing his position and agree to plead guilty. Two days later, Hunter's lawyer informed the government that Hunter had not changed his mind. Another year passed before the government formally indicted Hunter on September 16, 1998. By the time the government indicted Hunter, the five-year statute of limitations was only five days from expiring on the earliest charged act of criminal conduct.

Hunter moved to dismiss the indictment on the basis that the government's delay had deprived him of his due process right to a fair trial because he had little or no recollection of the events charged in the indictment. As a result of his memory loss, Hunter claimed that he was unable to assist his attorney in presenting a defense to the charges against him. In support of his motion, Hunter submitted an affidavit stating that severe substance abuse during the time of his alleged criminal conduct prevented him from remembering any of the charged events with clarity. According to Hunter, he was drinking about a fifth of whiskey and using about 5 grams of heroin per day. Hunter's intense drug and alcohol use caused him to "pass out" two to three times per week. Specifically, Hunter's affidavit stated:

> [m]y ability to recollect the events occurring during the years 1990 through 1993, including the particular facts surrounding the allegations contained in the indictment, has been negatively affected by my long-term use of heroin. Because my day-to-day life was focused on obtaining and getting high on heroin I had a very weak recollection of events occurring during that period. As time has passed over the last five years my memory of events occurring in 1993 and earlier has faded to a very high degree to the extent that I have no recollection of some events.

Hunter's attorney argued that if Hunter had been indicted sooner he would have remembered conversations, who was present during these conversations, and the

names of witnesses that could be called on his behalf.

The district court denied Hunter's motion to dismiss the indictment saying Hunter presented "nothing to indicate the precise nature or extent of his memory loss, nor the portion of that loss attributable to pre-indictment delay." The court therefore found that there was "virtually no evidence—either medical or otherwise" to substantiate Hunter's asserted memory loss. Because Hunter failed to show "specific, concrete allegations supported by evidence," the district judge concluded that Hunter did not establish that the delay in the indictment caused him prejudice. Hunter now appeals the trial court's decision.[1]

## II. ANALYSIS

■ We review a district court's decision to deny a motion to dismiss an indictment for prosecutorial delay for abuse of discretion. *United States v. Spears*, 159 F.3d 1081, 1084 (7th Cir.1998). Generally, congressionally-established statutes of limitation provide the primary safeguard against unreasonable delay in prosecutorial charging decisions. *United States v. Pardue*, 134 F.3d 1316, 1319 (7th Cir.1998). The Supreme Court has, however, held that the Fifth Amendment's Due Process Clause "has a limited role to play in protecting against oppressive delay." *United States v. Lovasco*, 431 U.S. 783, 789, 97 S.Ct. 2044, 52 L.Ed.2d 752 (1977). To succeed on a motion to dismiss an indictment for unfair delay, the defendant must establish that the delay "caused actual and substantial prejudice to his right to a fair trial." *United States v. Sowa*, 34 F.3d 447, 450 (7th Cir.1994). The defendant's burden in this regard is quite stringent; that is, the defendant must do more than make hollow allegations of prejudice. *United States v. L'Allier*, 838 F.2d 234, 238 (7th Cir.1988). Rather, the defendant's allegations of actual and substantial prejudice

must be "specific, concrete, and supported by evidence." *Pharm v. Hatcher*, 984 F.2d 783, 787 (7th Cir.1993). If the defendant shows specific and concrete evidence that he has suffered prejudice, the burden then shifts to the government to show that "the purpose of the delay was not to gain a tactical advantage over the defendant or for some other impermissible reason." *Spears*, 159 F.3d at 1084–85; *see also Sowa*, 34 F.3d at 451.

■ Hunter argues that his undisputed substance abuse coupled with his affidavit stating that he cannot remember events connected to his criminal activity establish that the pre-indictment delay was prejudicial. We cannot, however, say that the district court abused its discretion by finding Hunter's affidavit insufficient to establish the prejudice required to support a violation of the Fifth Amendment's guarantee of a fair trial. Other than Hunter's self-serving, uncorroborated, and unsupported affidavit, there is nothing in the record to suggest that Hunter cannot recall the events surrounding his arrest and indictment. Judge Bucklo's decision to discredit Hunter's affidavit in these circumstances was entirely consistent with our precedent holding that a defendant's bare allegations of faded memory are insufficient to establish a violation of due process. *See, e.g., United States v. Baker*, 40 F.3d 154, 158 (7th Cir.1994); *United States v. Windom*, 19 F.3d 1190, 1195 (7th Cir.1994); *United States v. L'Allier*, 838 F.2d 234, 238 (7th Cir.1988). We also note that the district court's decision was aided by the fact that many of the conversations Hunter claims to have forgotten were tape recorded by the undercover Postal Inspector and therefore readily available to him. Additionally, Hunter has had the same attorney representing him since shortly after his arrest and his lawyer surely could have helped Hunter refresh his recollections. In view of these facts, we find that the trial court did not abuse its discretion

---

1. Hunter eventually went to trial and was convicted on all counts of the indictment. Hunter's wife, Katrina, pleaded guilty before trial.

by denying Hunter's motion to dismiss the indictment for unreasonable prosecutorial delay.

Because we agree with the district court's conclusion that Hunter suffered no prejudice as a result of the preindictment delay, we need not consider the government's reasons for taking so long to indict Hunter. However, this case gives us an opportunity to review a fundamental tenet of our criminal justice system. One of the primary goals of our system of criminal law is to deter criminal conduct by others; however, if the criminal justice system does not react swiftly to criminal activity, this purpose becomes seriously weakened and the criminal law potentially crippled. If a person commits a crime, gets arrested for that crime, but is not charged or taken to trial until several years after the crime, it appears to others during the intervening years that the crime is going unpunished. By delaying the indictment and prosecution of crimes, prosecutors can create the impression that criminal acts do not have consequences and thereby seriously undermine the deterrent purpose of criminal law. Ideally, criminal law should be administered in hot blood. The crime, once uncovered, should be swiftly dealt with by arrest, indictment and trial. While some complicated cases may require long-term investigation, most do not. Swift justice is required for the benefit of the public, the victims and, in a different sense, the accused himself. And prosecutors should remind themselves of this on a frequent basis.

### III. CONCLUSION

For the foregoing reasons, we affirm the judgment of the district court.